**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CELLCAST TECHNOLOGIES, LLC and ENVISIONIT LLC, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| THE UNITED STATES, | ) No. 15-1307<br>) |
| Defendant, | ) Judge Victor J. Wolski<br>) |
| and | )<br>) |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | )<br>)<br>) |
| Third-party Defendant. | )<br>) |

**PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I.      Introduction ...............................................................................................................1

II.     Response to Overview of the Asserted Patents and Claims ...................................1

        A.      The Disclosure of the Asserted Patents .....................................................1

        B.      The Asserted Claims ..................................................................................2

III.    Response to Technological Background ..................................................................3

IV.     Response to Legal Principles of Claim Construction .............................................6

V.      Response to Defendants' Proposed Constructions for Disputed Terms .................6

        A.      "Broadcast" ................................................................................................6

        B.      "Broadcast message" .................................................................................8

        C.      "Broadcast message record" / "broadcast request" / "broadcast message request" .....................................................................................................11

        D.      "Broadcast message originator" / "broadcast agent" ...............................13

        E.      "Broadcast message originator identifier" ...............................................14

        F.      "Broadcast message originator parameter" ..............................................15

        G.      "Common Alerting Protocol (CAP)" ......................................................17

        H.      "Generating a validated broadcast message record" ...............................17

VI.     Response to Defendants' Invalidity Argument Concerning Alleged Means Plus Function Terms ....................................................................................................19

        A.      The claim limitations are not indefinite because each alleged function is supported by disclosure of an algorithm. ...............................................21

                1.      The specification discloses an algorithm for the broadcast admission control module to receive the broadcast message record ..........................23

                2.      The specification discloses an algorithm for the broadcast admission control module to validate the broadcast message record as a function [of] one or more [parameters] ....................................................24

3.    The specification discloses an algorithm for the broadcast admission control module to generate a validated broadcast message record as a function of the validating. ..........................................................26

4.    The specification discloses an algorithm for the broadcast message distributor module to receive the validated broadcast message record. ..........................................................................................27

5.    The specification discloses an algorithm for the broadcast message distributor module to transmit the broadcast message and the broadcast target area, or a part thereof, to an output interface configured for distributing the broadcast message to at least a portion of the broadcast target area. ..................................................27

B.    Conclusion on Alleged Means Plus Function Terms..............................................29

VII.    Claim Construction Hearing ..............................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
   616 F.3d 1283 (Fed. Cir. 2010).................................................................6

*All-Voice Computing PLC v. Nuance Commc'ns, Inc.*,
   504 F.3d 1236 (Fed. Cir. 2007)...............................................................21

*Apple Inc. v. Samsung Elecs. Co.*,
   839 F.3d 1034 (Fed. Cir. 2016) (en banc)................................................4

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006)...............................................................20

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012).................................................................8

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006)...................................................................8

*Cisco Sys., Inc. v. Teleconference Sys., LLC*,
   No. C 09-01550 JSW, 2011 WL 5913972 (N.D. Cal. Nov. 28, 2011) .....................8

*CoStar Realty Info., Inc. v. CIVIX-DDI, LLC*,
   No. 12 C 4968, 2013 WL 5346440 (N.D. Ill. Sept. 23, 2013).......................8

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent
   Litigation*,
   676 F.3d 1063 (Fed. Cir. 2012).................................................................4

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.*,
   64 F.3d 1553 (Fed. Cir. 1995)...................................................................2

*Fifth Generation Computer Corp. v. International Business Machines Corp.*,
   416 Fed.Appx. 74 (Fed. Cir. 2011) ...........................................................2

*Finisar Corp. v. DirecTV Grp., Inc.*,
   523 F.3d 1323 (Fed. Cir. 2008).................................................21, 22, 24

*In re Gabapentin Patent Litig.*,
   503 F.3d 1254 (Fed. Cir. 2007).................................................................8

*Hyperphrase Technologies, LLC v. Google, Inc.*,
   260 Fed.Appx. 274 (Fed. Cir. 2007) .......................................................14

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*,
    805 F.3d 1102 (Fed. Cir. 2015)................................................................................7, 13, 19

*In re Katz Interactive Call Processing Patent Litigation*,
    639 F.3d 1303 (Fed. Cir. 2011).......................................................................................14

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351 (Fed. Cir. 2000)...................................................................................10, 15

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005)..........................................................................................2

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012)..........................................................................20, 21, 22, 28

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc).......................................................................7, 18

*TecSec, Inc. v. IBM Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013).......................................................................................20

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011)........................................................................21, 22, 28

*Woods v. DeAngelo Marine Exhaust, Inc.*,
    692 F.3d 1272 (Fed. Cir. 2012)..........................................................................................9

**Statutes**

35 U.S.C. § 112...............................................................................................................20

## I.    Introduction

Defendants' proposed constructions, as presented in Defendants' opening claim construction brief (Dkt. No. 54) ("Defs. Opening Br.") suffer from problems across the board. In some cases, they are overly limiting, while, in others, they are too broad or vague. In many cases, Defendants' proposed constructions are simply unsupported by evidence; and, in some cases, Defendants cite evidence that supports Plaintiffs' proposed constructions and refutes Defendants'. For those reasons and others, as detailed below, Plaintiffs respectfully ask the Court to adopt Plaintiffs' proposed constructions and reject Defendants' proposed constructions.

In addition, Defendants use their opening brief to argue that the asserted patents were obvious in view of the prior art, without saying so explicitly. Defendants are entirely incorrect; regardless, claim construction briefing simply is not the place to raise such arguments, just as it is not the place for Plaintiffs to argue their infringement case.

Finally, with the briefing complete, Plaintiffs stand ready to schedule a claim construction hearing at the Court's earliest convenience.

## II.    Response to Overview of the Asserted Patents and Claims

### A.    The Disclosure of the Asserted Patents

Defendants improperly characterize the asserted patents by mentioning selected aspects of the patents' disclosure. Instead, the patents' full disclosures and claims speak from themselves. Generally, the patents are directed to systems and methods for the delivery of broadcast messages to specifically geotargeted areas, in which broadcast message originators have authorized levels of authority to request the delivery of such broadcast messages to particular geographic areas, and the system or method validates whether a broadcast message originator has the authority to request the delivery of a broadcast message to a geographic area for which the originator has requested delivery, but each claim has its own specific limitations.

Plaintiffs will not go on at length about the full extent of the patents' disclosures. While Plaintiffs disagree with Defendants regarding the patents' effective filing dates, Plaintiffs agree that citations to the specification of the '938 patent are appropriate.

### B. The Asserted Claims

Defendants' description of the asserted claims is erroneous and misleading. Defendants over-simplify and mischaracterize the claims and their terms right from the start by arguing that the asserted claims do not recite any limitations as to what <u>types</u> of messages are broadcast. Indeed a "<u>broadcast</u> message," as required by <u>all</u> asserted claims, is different from a more generic "message."[1] Defendants repeatedly attempt to read the term "broadcast" out of the full term "broadcast message," in violation of a basic principle of patent claim construction that <u>every claim term must be given meaning</u>. *Exxon Chemical Patents, Inc. v. Lubrizol Corp*., 64 F.3d 1553, 1557 (Fed. Cir. 1995) (A court "must give meaning to all the words in [the] claims."); *Merck & Co., Inc. v. Teva Pharm. USA, Inc*., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("When considering multiple possible claim constructions, '[a] claim construction that gives meaning to all the terms of the claims is preferred over one that does not do so.") (citation omitted); *Fifth Generation Computer Corp. v. International Business Machines Corp*., 416 Fed.Appx. 74, 78–79 (Fed. Cir. 2011) (nonprecedential) (The notice function of claims "would be undermined, however, if courts construed claims so as to render characteristics specifically described in those claims superfluous. As such, we construe claims to give effect to all of their terms.").

Moreover, the patents are directed to and claim more than just the validation of a message or the broadcast agent or originator of the message. The claims recite a number of specific functionalities of the claimed systems and methods, including the receipt of broadcast message

---

[1] If Defendants' argument is that the claims do not recite the specific contents of the messages, e.g., a tornado warning, then Plaintiffs agree.

requests, the validation of the requests or the agents or originators of such requests, and the dissemination of the broadcast messages, among other things. As discussed further below, Defendants are simply wrong that the claimed "broadcast message originator" or "broadcast agent" is limited to a person. Indeed the patents go on at length about agencies as the source of broadcast messages and even describe an embodiment in which an automatic machine makes broadcast message request on behalf of an entity. *See* '938 patent 9:63–10:3.

## III.    Response to Technological Background

Defendants include four pages of purported "technological background" to the asserted patents, cherry picking four references and providing an incomplete discussion of the alleged history of the technology. Defs. Opening Br., pp. 5–9. In reality, Defendants' discussion is an attempt to argue Defendants' prior art invalidity defense[2] during claim construction and, as a result, is an improper use of this Court's valuable time. Defendants did not identify any of their selected references as extrinsic evidence upon which they sought to rely in claim construction. Accordingly, Plaintiffs ask the Court to disregard that discussion. To the extent that the Court does not disregard Defendants' purported "technological background," Plaintiffs respond as follows.

First, Defendants' cited references actually explained that, at the time they were written, a <u>need</u> existed for a better system than those that existed previously. However, Defendants' cited references did not disclose actual systems to <u>solve</u> that need. For example, the FCC Report, which described the antiquated existing EBS, did not describe a system that had actually been implemented for EAS – only the need for it; the FCC Report was a paper that defined a future

---

[2] Plaintiffs do not concede that any of the references in Defendants' "Technological Background" section necessarily qualify as prior art.

EAS system, and did not describe an existing system. 1994 FCC Report, Exhibit 8 to Defs. Opening Br., Docket No. 54-8, at ¶ 1.

Similarly, Defendants' own descriptions of the NTSC Report show that it was a prospective document and not one that provided solutions. Defendants admit that the NTSC Report disclosed "'needs for and the policy issues of implementing advanced technologies for delivering warnings to people at risk'", was "focused on policy issues," and was not a document that described an actual implementation. Defs. Opening Br. at 7–8.

In reality, Defendants have demonstrated that a long felt need for a better system existed at the time the applications for the asserted patents came along. Long felt need is actually a primary consideration that weighs against a conclusion that a patent's claims are obvious in light of the prior art. *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1056 (Fed. Cir. 2016) (en banc) ("Evidence of a long-felt but unresolved need can weigh in favor of the non-obviousness of an invention because it is reasonable to infer the need would not have persisted had the solution been obvious."); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 676 F.3d 1063, 1082–83 (Fed. Cir. 2012) ("Longfelt need is closely related to the failure of others. Evidence is particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand.").

Second, during this case, the government petitioned the Patent Office for *inter partes* review of the '938, '212, and '719 patents on the basis of the FCC Report (again, which described the existing EBS and prospective EAS concept), and the Patent Office flatly rejected all of those petitions, concluding in each one that the government "has not established a reasonable likelihood that it would prevail with respect to any of the challenged claims" or that

"the information presented does not show there is a reasonable likelihood that Petitioner would prevail in establishing the unpatentability of any of the challenged claims" on the basis of the FCC Report.  *See* Ex. 1 (Cover and selected pages from Decision Denying Institution of *Inter Partes* Review in Case IPR2017-00183 ('938 patent)) (highlighting added); Ex. 2 (Cover and selected pages from Decision Denying Institution of *Inter Partes* Review in Case IPR2017-00185 ('212 patent)) (highlighting added); Ex. 3 (Cover and selected pages from Decision Denying Institution of *Inter Partes Review* in Case IPR2017-00186 (''719 patent)) (highlighting added).

Third, even well after the filing dates, and at the time that the government created IPAWS – the accused system that implements Plaintiffs' patented technology – the government acknowledged the shortcoming that even EAS did not have technology sufficient to use geotargeting to deliver emergency alerts in a way that reached the right audience (a problem overcome by the inventions claimed in the asserted patents):

> **3. Capability Gap**  Currently, there are a number of links in the chain from the President and the Executive Branch to the public which could fail and prevent an alert or warning from being delivered.  A major weakness in the EAS is the limited listening audience.  On average, Americans only spend 12% of their day listening to the radio and 31% watching television.  Further, less than one percent of Americans listen to the radio or watch television in the middle of the night.  Moreover, 17% percent of households use satellite television which is not compatible with EAS.[1]
>
> Current alert and warning systems have limited geo-targeting that may result in a failure to reach the right audience.  Because radio and television typically broadcast to more than one regional audience, warnings frequently reach people who are not at risk.  The current national-level system makes it difficult to send a unique message to a particular city or area.

Ex. 4 (FEMA Mission Need Statement (MNS) for Integrated Public Alert and Warning System (IPAWS) Program, version .04, January 22, 2008) at pp. 4–5.

**IV.    Response to Legal Principles of Claim Construction**

While Defendants' recitation of the law concerning claim construction is highly incomplete, Plaintiffs will discuss the relevant law in-line below.

**V.    Response to Defendants' Proposed Constructions for Disputed Terms**

Plaintiffs provided and explained their proposed constructions for each of the terms below in Plaintiffs' Corrected Claim Construction Brief, Docket No. 53 ("Plaintiffs' Opening Brief" or "Plfs. Opening Br."). Below, Plaintiffs respond to Defendants' positions, without completely restating the presentation in Plaintiffs' Opening Brief.

**A.    "Broadcast"**

The broadcast nature of the technology disclosed and claimed in the patents is critical and at the very heart of this case. The patents explain the advantages of broadcast technology (in novel combination with the other claimed aspects). Without a doubt, the patents' use of "broadcast" conveys dissemination to all within a geotargeted area. For example:

> A public service message location broadcasting system and method according to one or more embodiments provides for the development, transmission, delivery and display of a message that is an official government-to-citizen information broadcast <u>to all compatible devices in or entering, an at-risk geographic location or area</u>.

'938 patent at 4:34–40 (emphasis added).

The meaning of a term in the patent claims cannot and should not be divorced from the patent specification's disclosure of the invention. *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) ("Claim terms are not construed in a vacuum divorced from the specification."). It is critical that the constructions of the claim terms not omit the broadcast nature of the system, explicitly and extensively claimed throughout the asserted patent claims.

Yet, Defendants attempt to do just that, although Defendants cannot do so effectively. Defendants first cite to a passage that does not define the term "broadcast" at all and, if anything, refutes Defendants' argument, because, it talks about sending messages to network operators who are able to transmit to the covered "area." Defs. Opening Br. at 12. Defendants then resort to a dictionary for a definition that is simply inapplicable in the present circumstances. *See Phillips*, 415 F.3d at 1322–23 (Dictionaries may be used "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.").

Defendants' argument regarding the inclusion of "cellular networks" in the construction is a red herring, because the issue isn't what networks are used – the issue is the geographic broadcast nature of the patented technology. Cellular networks (and other networks) may be used to send either or both broadcast messages (e.g. cell broadcast messages) and/or "narrow-cast" messages (e.g. SMS messages). Exhibit 1 to Plfs. Opening Br., Dkt. No. 54-1 (Provisional Application 60/544,739), at ¶ 10. Including examples of networks over which broadcast messages (and non-broadcast messages) may be sent can lead only to confusion.

In addition, no legal basis exists for including a list of possible networks over which broadcast might occur. It is entirely unnecessary and the epitome of reading an improper limitation into a patent claim term. *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, 805 F.3d 1102, 1109–10 (Fed. Cir. 2015) ("This court has repeatedly "cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.") (citations omitted); *see also, e.g.*, *Cisco Sys., Inc. v. Teleconference Sys., LLC*, No. C 09-01550 JSW, 2011 WL 5913972, at *8 (N.D. Cal. Nov. 28, 2011) ("The Court agrees that providing such an unexhausted list of examples would not assist the jury and could cause some confusion.

The Court therefore rejects Plaintiffs' proposed construction to the extent they include examples of such settings."); *CoStar Realty Info., Inc. v. CIVIX-DDI, LLC*, No. 12 C 4968, 2013 WL 5346440, at *15 (N.D. Ill. Sept. 23, 2013) ("The court thus believes it would be misleading to include the language "for example, an address" in the definition.").

Moreover, Defendants' examples entirely ignore the geographic nature of the broadcast technology at the heart of the inventions and that the patents reference so extensively. *See, e.g.*, '938 patent at 4:34–40. While Defendants attempt to remedy this by including "wide dissemination" in their construction, Plaintiffs have already explained why "wide dissemination" is unsupported and vague. Plfs. Opening Br. at 15.

### B.    "Broadcast message"

Defendants' proposed construction ignores the patents' specifications, is vague, and entirely omits the meaning of "broadcast" from the term "broadcast message." It is hard to see how Defendants' proposal for "broadcast message" would differ in any way from any definition it would put forth for the term "message," alone. What message would not be "intended for distribution"? To read "broadcast" out of the claim term "broadcast message" violates a basic rule of claim construction. *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1263 (Fed. Cir. 2007) (affirming claim construction that "gives full meaning to every word of the entire claim term."); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[c]laims are interpreted with an eye toward giving effect to all terms in the claim"); *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348 (Fed. Cir. 2012) (district court erred in construing "rearwardly directed free end" to just be a rearwardly directed portion since that read out the "free" requirement.). By Defendants' reasoning, a "red car," a "car," and even a "blue car" all would mean the same thing.

Defendants' own proposed construction, which includes explanation of the intended distribution of a broadcast message, belies Defendants' argument at page 14 that "broadcast message" refers only to the content of a message. Defendants' argument that the presence of "broadcast target area" elsewhere in the patent claims somehow means that "broadcast message" should just mean "message" is not well-founded. The presence of the word "broadcast" elsewhere in the claims in no way detracts from its use and meaning in a particular instance. By analogy, a reference in a patent claim to "a parking garage for red cars" would in no way convert the use of the term "red car" elsewhere in the claim to "car." Defendants cite *Woods v. DeAngelo Marine Exhaust, Inc.*, but it is inapposite. 692 F.3d 1272 (Fed. Cir. 2012). In *Woods*, the patentee argued that the term "angularly disposed" spray ring should also include a limitation on the direction of the water spray towards an outer shell. *Id.* at 1285. The Federal Circuit affirmed the lower court's construction because the patentee's proposed limitation on the direction of the water spray was already found in the claims. *Id.* Here, the claims do not expressly include a limitation on the intended distribution of the broadcast message as proposed by the Plaintiffs. The claim term "broadcast target area" is not equal to the intended recipients within the target area. Therefore, unlike the proposed construction in *Woods*, Plaintiffs' inclusion of "to all recipients within a target area" does not render the additional "broadcast target area" superfluous.

Defendants' argument with regard to claims that recite "at least a portion of the broadcast target area" is entirely erroneous. Defendants cite claim 1 of the '938 patent, which is a system claim. That claim has a broadcast message interface, a broadcast admission control module, and a broadcast message distributor module. The broadcast request interface is configured to receive a broadcast message record that has a broadcast message and a broadcast target area.

Nevertheless, because the system includes an <u>output interface</u> that is configured for distributing the broadcast message to at least <u>a portion of</u> the broadcast target area, Defendants argue that a broadcast message cannot be a message that is intended for distribution to a target geographic area. Defendants' position is misleading and erroneous. It is clear that the system disclosed in the patents is designed for transmission of broadcast messages to a target geographic area. That geographic area depends upon the scope of the requested distribution, among other things. In order to get the broadcast message to all parts of the target geographic area, the system may route the broadcast message to one or more output interfaces for distribution to the portions of the geographic area that they serve, respectively:

> In operation, the Broadcast Agent utilizes the web portal 202 to define the broadcast target area. The service bureau 102 receives the message profile 204 entered by the Broadcast Agent and cleared or authorized by the admission control module 220. The distributor 224 identifies the networks providing service to the broadcast target area for the requested message. The distributor 224 sends the broadcast message along with a coordinate-defined broadcast target area over the CBE-CBC interface 226 to the appropriate cell broadcast **centers** 114. The cell broadcast center 114 determines the network **elements** providing service to the defined broadcast target area and identifies the network addresses thereof. The cell broadcast center 114 transmits the broadcast message within the network 112 over a local facility to a broadcast switching center 116.

'938 patent 13:47–14:2 and FIG. 2 (highlighting and emphasis added). The fact that the claim calls for an output interface that serves at least a portion of the target geographic area does not detract from the facts that: 1) the message was intended for distribution to the entire target geographic area, and 2) the system may utilize <u>one or more output interfaces</u> to get the message to the target geographic area. A claim's use of "a" or "an" means "one or more" under the patent law. *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1355 (Fed. Cir. 2000) ("This court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'").

Claim 19 of the '221 patent is similar – the claim is directed to a method for distributing to a "geographically defined broadcast target area," and  one step is directed to "transmitting the broadcast message over <u>an output interface to one or more broadcast message networks</u> providing broadcast message alerting service to at least a portion of the broadcast target area." From the plain language of the claim, it is clear that the message is targeted to an entire geographic target area, and it may take one or more networks to cover the broadcast to the entire area.

Defendants' argument that statements during prosecution of the application for the '221 patent support their construction is unsupported by their citations, which indicate that, for the '221 patent, the claimed system receives a request that includes a particular message and a geographically defined target area or broadcast target area.  This is entirely consistent with Plaintiffs' construction, as well as the plain language of the claims themselves (which require a broadcast message and a broadcast target area).  The prosecution history never undercuts Plaintiffs' proposed construction that a broadcast message is one that is <u>intended</u> for a geographic target area.

Defendants finally make the conclusory argument that their proposed construction reflects plan and ordinary meaning, but they have neither supported that position nor overcome the vast intrinsic evidence that supports Plaintiffs' proposed construction.

**C.    "Broadcast message record" / "broadcast request" / "broadcast message request"**

Defendants' proposed construction is incorrect in at least two regards.  First, a broadcast message record, broadcast request, or broadcast message request is a data structure that contains information and not just the information itself.  Second, Defendants' proposed construction is unworkably vague in its use of "associated with."  Plaintiffs will address these issues in turn.

First, a record is a data structure, i.e., the container that holds the data, along with the data, and not just the data alone. '938 patent 17:1–3. Indeed, Defendants' citations are entirely to portions that support Plaintiffs' position. Defendants point to the same passages that describe the data request as an "object" or "file", i.e., an information container that includes various items of information. Defs. Opening Br. at 17–18. Even the Newton's Telecom Dictionary upon which Defendants rely refers to "a unit of information that is made up of fields that contain information." *Id.* at 18. Defendants appear hung up on Plaintiffs use of "data structure," but populated data structure simply means a set of fields that contain information, which is what Defendants appear to argue for (although not what their construction says). Plaintiffs propose "populated data structure" as a way of stating that the record is not just the information but also includes whatever data container holds it; it is more general than "file" but accurately reflects the disclosure of the specification. The patent supports this construction:

> The Administration Subsystem is responsible for creating an **object** called the **Broadcast Request**. **This file** details everything known about each proposal.

'938 patent 17:1–3 (emphasis added). This passage (cited by all parties) refutes Defendants' position that the request is just data. It isn't; the request includes the data container with the data.

Second, Defendants' proposed construction is vague to the point that it is erroneous, because Defendants' proposal would encompass any data that is "associated with" a (proposed) broadcast message, whether stored with the broadcast message or not. Would information concerning the broadcast message but that is not transmitted to or stored in the message broadcasting system still data "associated with" the broadcast message? Without a requirement that the information is held in the same information container, "associated with," as proposed by Defendants, would cause the construction to be vague and potentially encompass information that may have some *de minimus* or tangential connection to the broadcast message but is in no

way packaged with the broadcast message in the system or otherwise even received by the system.

### D.    "Broadcast message originator" / "broadcast agent"

Here, Plaintiffs attempt to read a limitation into the claim terms by arguing that both terms are limited to people and even to specific people, in violation of a basic principle of claim construction. *Imaginal Systematic*, 805 F.3d at 1109–10 ("This court has repeatedly 'cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.") (citations omitted).

Without a doubt, an agent or originator can be a person, but that does not preclude an agent or originator from being an entity (or an instrumentality operated by an entity) or negate the fact that patent contemplates that a broadcast agent or broadcast message originator could be an entity.  The patent describes that a component of the system "sends any public service or emergency information associated with an event, **as determined by authorized messaging entities** that may affect public safety." '938 patent 4:41–43 (emphasis added).  Nothing in the patent limits the agent to a human being, rather than an entity.  To the contrary, the patents clearly indicate that an agent can be an automated sensor operated by an entity.  Specifically, the patent discloses the use of predefined messages: "[t]he Broadcast Agent Administrator may also predefine set messages in the message library, so that some accounts may broadcast only predefined messages." '938 patent 9:44–46.  This functionality lends itself to use by automated input systems that could trigger such predefined messages; as an example, a water level sensor operated by a flood control agency could provide input that triggers a flood warning broadcast message to an impacted target geographic area, as explained by the patent:

> In other cases, **[1] the broadcast event may be triggered by an automatic machine such as a water level device.  If so, the event triggers the predefined message** as set up by previous agreements between the Broadcast Agent

> Administrator for that [2] **organization** and the Administrative Operator who administers the accounts on the PLBS-SB 102 in accordance with guidelines agreed upon by government authorities and local carriers

'938 patent 9:63–10:3 (emphasis added, and red numerals added for reference).  So, it is clear from this passage that: [1] a broadcast agent or originator is not limited to a human being, and [2] the broadcast agent or originator can be an entity.  It would be error to construe a claim term so as to exclude an embodiment in the patent, as Defendants advocate the Court to do.  *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) ("[T]here is a strong presumption against a claim construction that excludes a disclosed embodiment[.]"); *Hyperphrase Technologies, LLC v. Google, Inc.*, 260 Fed.Appx. 274, 280 (Fed. Cir. 2007) (nonprecedential) ("A claim construction that excludes an embodiment of the relevant claim(s) is typically incorrect.").

As to Defendants' position that an "originator" must be limited to a human being, Defendants have provided absolutely no argument or support, nor have they even attempted to argue that the plain and ordinary meaning of "originator" is "person" – because they can't do so credibly.  Nothing about the word "originator" is in any way limited to a human being.

### E.    "Broadcast message originator identifier"

Yet again, Defendants have not cited any intrinsic evidence to support their argument.  Here, Defendants argue that because a passage in the patent discloses that, in one example, a user enters both an ID and password, and because, in that one embodiment, a map is displayed as a function of the user ID, the Court should conclude that the identifier must be a single piece of information.  Defs. Opening Br. at 22–23; '938 patent 29:11–25.  That argument is flawed for a number of reasons.  First, even in the example cited by Defendants, two pieces of information are utilized and not one – a user ID and a password.  Second, the particular passage, describing a single embodiment, upon which Defendants rely is referring to underlined displaying a map as a function of

14

a user ID (which is not required by any asserted claim) – the passage does not talk about validating a message record based upon a user ID.  *Id.*  Third, as explained in Plaintiffs' opening brief, the notion that an identifier is limited to single piece of information is simply artificial and flawed.  The patent repeatedly discloses that the disclosed system lends itself to hierarchical administration.  *E.g.* '938 patent at FIGS. 13 and 14; 37:21–40.  It certainly is possible that an originator could be a particular police department within a state – for example, a state with ten different county police departments.   That police department could be identified by the combination of a number representing the state, along with another number identifying the specific county police department – two pieces of information, yet, in combination, uniquely identifying a single county police department.  Defendants' proposal appears to preclude that combination of information values and, therefore, is improperly limiting.  Finally, there is no basis to limit these "comprising" claims to a single "piece" of information.  *See KCJ Corp.*, 223 F.3d at 1355 ("an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'").

      **F.**      **"Broadcast message originator parameter"**

Here, the parties dispute which proposed construction is more specific.  Plaintiffs contend that "regarding the broadcast message originator" is more specific than "associated with the broadcast message originator," and Plaintiffs cannot see how reasonable minds could differ on that point.  The parameter at issue is one that concerns the broadcast message originator – hence Plaintiffs' proposed "regarding."   "Concerning" or "related to" also would be acceptable to Plaintiffs.  Defendants' proposal, however, is entirely vague.  What does "associated with" mean in the context of the claims?  Defendants point to specification passages such as "[t]he user parameter 206 can include authorizations or limitations related to the Broadcast Agent" and "stored information related to one or more accounts or Broadcast Agents utilizing or accessing

the service bureau," among others, Defs. Opening Br. at 23–24 (emphasis added), but those passages only support Plaintiffs' proposed construction.

The other passages cited by Defendants are inapplicable to the "broadcast message originator parameter," and Defendants' claim differentiation argument is simply factually wrong. A significant difference exists between "information that identifies" and "information regarding." Using a simple example: a Social Security Number is information that identifies a person, but the fact that person resides in Virginia is information regarding the person. Residence in Virginia does not identify the person. Thus, Plaintiffs do not ascribe the same meaning to "identifier" and "parameter."

Defendants' argument that its proposal is supported by the intrinsic record makes no sense. First – their argument fails to fully present the claim language to the Court. Claim 13 recites that "the broadcast message originator parameter includes one or more of an authorized broadcast message originator code," along with a list of nine other possible items concerning the broadcast message originator. Second – and possibly because of that omission, Defendants' argument makes no sense. Claim 13 requires that the broadcast message originator parameter must include one or more of ten specifically listed categories of values. While the broadcast message originator code, which identifies the broadcast message originator, could constitute a broadcast message originator parameter, so too could other values regarding the broadcast message originator that don't uniquely identify the broadcast message originator – e.g., "a reusable geographic broadcast target area template authorization parameter." *See* '938 patent claim 13.

All of Defendants' arguments are a diversion from the only difference between the constructions proposed here – "associated with" is vague and certainly less appropriate and accurate in the context of the asserted claims.

### G.    "Common Alerting Protocol (CAP)"

This term appears in only one asserted claim – '212 patent claim 20, and the claim refers to the protocol format for broadcast message record.  The parties agree that CAP has to do with the OASIS Cap standard.  Although subtle, the parties' proposals differ in two ways.  Defendants acknowledge only one in their brief.  Defs. Opening Br. at 26.

The distinction that Defendants overlook is that the claim term is directed to a protocol and not to a standard *per se*.  Defendants propose to construe a protocol as a standard.  While the parties agree that a standard contains a protocol, that does not make "protocol" and "standard" synonymous.  Plaintiffs' proposal is more correct in that it construes the term to be the protocol defined in the standard.

Next, the parties differ as to how the standard should be defined.  Claims are always construed from the perspective of one of ordinary skill in the art at the time of the invention.  However, courts typically do not include a date within their definitions – e.g., in the case of a 1998 patent application, construing a car to mean "a car as of 1998."  While the CAP Standard may have changed over time, the primary aspects of the protocol have remained constant.  *See* CAP v1.2, Exhibit 11 to Defs. Opening Br., Dkt. No. 54-11 at § 1.2 (describing the changes between version 1.0 and 1.2).  Although not a particularly significant distinction, the point here is that limitation to a particular version of the CAP standard is unnecessarily limiting.

### H.    "Generating a validated broadcast message record"

Defendants' proposal for this term is beyond a stretch – it is incomprehensible.  Defs. Opening Br. at 27–28.  The parties do not largely agree on the construction of this term.

Defendants are entirely wrong that the validated broadcast message record must include "data indicating successful validation." Defs. Opening Br. at 27. The fact that the system or method has generated the validated broadcast record (that is, the existence of the validated broadcast message record) is itself all that the claimed method or system requires. The first and primary place to which a court should look for purposes of construing the claim terms is the language of the claims themselves. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). Here, each of '938 claim 1, 719 claim 14, and '212 claim 13 calls either for steps in the broadcast messaging to a broadcast target area or for the components of a message broadcasting system providing a broadcast message to a broadcast target area. It is entirely clear from the structure of the claims that they provide for the flow of information through the system or processing of information according to a claimed method. Absolutely nothing in the claims supports Defendants' proposal that the construction should require that the validated broadcast message record "further includes data indicating successful validation." Defs. Opening Br. at 27. All that the claims require is a validated broadcast message record. Whether claimed as a system or a series of steps, the concept generally is the same – if a message record passes validation, then a validated message record is created and passed to the next step or part of the system; if a message record fails validation, no validated message record is created. The fact that the validated message record was created in and of itself serves as confirmation of the validation: if the message record had not been validated by the system (or method), then no validated message record would be passed along to the next part of the system (or to the next method step). Nothing about the claims requires additional information in the validated message record indicating that it was a validated message – again, the mere existence of the validated message record indicates its validation. Although reading a limitation from an embodiment into the

claims would be improper, *Imaginal Systematic*, 805 F.3d at 1109–10, no such embodiment even exists in the specification. Defendants point to a specification passage that discloses a functionality that can generate reports or log files concerning the success or failure of message requests. Defs. Opening Br. at 28. That has nothing to do with the functionality in the independent claim of generating validated broadcast message requests; it is a separate function. Note that asserted claim 47 of the '938 patent requires "storing the **submitted** broadcast message record to a broadcast message log file" (emphasis added) rather than the "validated broadcast message record."

## VI. Response to Defendants' Invalidity Argument Concerning Alleged Means Plus Function Terms

Defendants are incorrect in their position that '938 patent claim 1 includes means plus function elements, but, even if the Court were to conclude that these claims include means plus function elements, the patents disclose sufficient corresponding structure.

The two limitations at issue are:

[1] a broadcast admission control module configured for receiving the broadcast message record, validating the broadcast message record as a function one or more of the broadcast message originator identifier, the broadcast target area, and a broadcast message transmission network parameter associated with a broadcast transmission network adapted for broadcasting the message to at least a portion of the broadcast target area, said broadcast admission control module configured for generating a validated broadcast message record as a function of the validating[; and]

[2] a broadcast message distributor module configured for receiving the validated broadcast message record and transmitting the broadcast message and the broadcast target area, or a part thereof, to an output interface configured for distributing the broadcast message to at least a portion of the broadcast target area.

In their opening brief, Plaintiffs explained why those limitations should not be construed according to § 112, ¶ 6. *See* Plfs. Opening Br. at 24. Plaintiffs will not restate that explanation

here.  However, even if the Court were to determine that the limitations are subject to § 112, ¶ 6, then the claim limitations are not indefinite.

In order to construe a means plus function claim term, a court must first determine the claimed function, and then "identify the corresponding structure in the written description of the patent that performs the function."  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006).  The term is then "construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112 (2006). Defendants argue that the specification discloses no corresponding structure for any of the functions identified in these elements.  Defendants bear a high burden, because "[t]he party alleging that the specification fails to disclose sufficient corresponding structure must make that showing by clear and convincing evidence.").  *TecSec, Inc. v. IBM Corp.*, 731 F.3d 1336, 1349 (Fed. Cir. 2013).  Here, Defendants have failed to carry this burden.

The parties agree that these elements are met by software that executes on a specifically identified server (or network of servers).  *See* Defs. Opening Br. at 33 & n.17.  Accordingly, the only issue before this Court is whether the specification discloses sufficient structure, in the form of an algorithm, to perform the identified functions.  The Federal Circuit has recognized that the case law concerning whether the specification discloses adequate structure for a term construed pursuant to § 112, ¶ 6 that involves executing software "is divided into two distinct groups." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1313 (Fed. Cir. 2012).  In the first group of cases (the "no disclosed algorithm" group), the specification discloses no algorithm for a given function.   In the second (the "disclosed algorithm" group), the specification discloses an algorithm that a defendant argues is insufficient.  *Id.*  In the "disclosed algorithm" situation, "the

sufficiency of the disclosure of algorithmic structure must be judged <u>in light of what one of ordinary skill in the art would understand the disclosure to impart.</u>" *Id.* (emphasis added)

Defendants have argued that this case falls into the "no disclosed algorithm" situation. Defs. Opening Br. at 35. Defendants have only argued that the specification does not contain algorithms for the functions, and have not made any argument or propounded any evidence regarding how the disclosure would be viewed by a person of skill in the art. *See All-Voice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1245 (Fed. Cir. 2007) ("[A]lgorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art."). Accordingly, the Court should find claim 1 invalid only if it finds that the specification discloses no algorithm for the recited functions.

### A. The claim limitations are not indefinite because each alleged function is supported by disclosure of an algorithm.

Again, the claim terms at issue are not means plus function claim terms, but even if the Court were to disagree, the specification discloses structure corresponding to the alleged functions.

In determining whether an algorithm is disclosed for a given function, the Federal Circuit has made clear that the standard is not difficult to meet. For example, in *Finisar*, the Federal Circuit noted that "[t]his court does not impose a lofty standard in its indefiniteness cases" and described the required disclosure as "minimal." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1341 (Fed. Cir. 2008). When disclosing an algorithm, "precedent and practice permit a patentee to express that procedural algorithm 'in ***any*** understandable terms…." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011) (internal quotation marks omitted) (emphasis added).

21

As explained below, the specification discloses algorithms for each of the (alleged) functions identified by Defendants. In the cases finding no disclosure of an algorithm for at least one identified function, the lack of algorithm support is quite apparent. For example, in *Finisar*, the patent at issue recited only "software 132 executed by CPU 130," with no description of the algorithm. 523 F.3d at 1340. In *Noah*, the court found that a sufficient algorithm was present for the function of providing access to a file, but that no algorithm was present for the function of "enabling [an entity] to perform one or more of the activities selected from the group consisting of entering, deleting, reviewing, adjusting and processing the data inputs" because the patent only related to access control and contained no description of how to perform any of those functions. *Noah*, 675 F.3d at 1314.

Notably, the algorithm that the *Noah* court found sufficient for access control was "authorized agents are provided with passcodes and that agents cannot enter, delete, review, adjust or process data inputs within the master ledger unless the passcode is verified." *Id.* at 1313. Likewise, in *Typhoon Touch*, the court found sufficient the following algorithm for computer assisted cross-referencing: "[c]ross-referencing entails the matching of entered responses with a library of possible responses, and, if a match is encountered, displaying the fact of the match…." *Typhoon Touch*, 659 F.3d at 1386.

The '938 patent specification satisfies the legal standard and discloses an algorithm for each of the identified functions. The admission control module receives message records from a queue (that contains message records received by the broadcast request interface), performs validation, and (only if validation is successful) copies the broadcast record to a queue that contains only validated broadcast records. Likewise, the message distributor module receives message records from a queue (the output of the admission control module) and transmits the

message and the target area to an output interface. The specification provides algorithms for each of these functions.

### 1. The specification discloses an algorithm for the broadcast admission control module to receive the broadcast message record.

As explained in Plaintiffs' Opening Brief at 26, the specification support for the broadcast admission control module is the admission control subsystem designated as element 220 of Figure 2, and described in detail as part of Figure 3. It is worth noting that Figure 3 is described as the "CBB Admission Control <u>Algorithm</u>." '938 patent at FIG. 3 (emphasis added). The specification discloses an algorithm for receiving the broadcast message record by retrieving the message record from the message queue 342 (where the message record was stored by the first element of claim 1, the "broadcast request interface").

> The method 300 starts at a Next Broadcast Agent Message Request (BR) process 302. BR messages are held in a message queue 346 and may be received from broadcast agents on site or from a remote Broadcast Agent System. Messages held in queue are sequenced by predefined message priority codes that are included within the submitted broadcast message request.

'938 patent at 24:1–7. *See also* '938 patent at FIG. 3 (relevant portion enlarged):



Defendants appear to argue that this claim limitation requires receiving the broadcast message record directly from a broadcast agent. Defs. Opening Br. at 35–36. To the contrary, it is the first claim element, a broadcast request interface, that is configured for receiving **a** broadcast message record (and the specification discloses that this interface receives the message record from a broadcast agent and stores it in a queue). The claimed broadcast admission control

module is configured for receiving **the** broadcast message record (a reference to the antecedent "a broadcast message record") – in other words, the admission control module is configured to receive the record from the request interface, not a new record directly from an external agent. Accordingly, the disclosure of retrieving the record from a message queue is sufficient algorithm for this simple function. *See Finisar*, 523 F.3d at 1341 ("This court does not impose a lofty standard in its indefiniteness cases.").

> **2.** **The specification discloses an algorithm for the broadcast admission control module to validate the broadcast message record as a function [of] one or more [parameters].**

Element 220 of Figure 2 also performs the function of validating the broadcast message as a function of one or more of the broadcast message originator identifier, the broadcast target area, and a broadcast message transmission network parameter (as claimed). The specification discloses the algorithm used to validate the broadcast message record as a function of the broadcast message originator identifier:

> The next process is a Security Fail process 306 that provides that the User ID is checked against the password and authentication key entered in the database. (The Administration Control system has validated the data link and network address of the originating terminal in the case of secure tunneling or Virtual Private Network or VPN access).

'938 patent at 24:12–17.

The specification discloses an algorithm used to validate the broadcast message record as a function of the broadcast target area:

> Admission Control Subsystem 220 fetches a Broadcast Agent profile from the account data database 216. … Admission Control 220 will then check the Broadcast Target Area/Footprint against the profile. If not within the Jurisdiction the message will be declined.

'938 patent at 16:7–24.

Finally, the specification discloses the algorithm used for validating the broadcast message as a function of a broadcast message transmission network parameter associated with a broadcast transmission network adapted for broadcasting the message to at least a portion of the broadcast target area: "The Admission Parameters for this network will now be queried from the Administration Data Base or from the account data database 216 and examined." *Id.* at 24:31–34. Specific example admission parameters associated with a broadcast transmission network are also disclosed, including for example a parameter that reflects a list of channels allowed by the network:

> The networks requested are checked against the account data database 216. The Web Portal 202 may have participating networks 112 that the account data database 216 has defined, however in some cases some networks may accept some channels while others do not. If so, the broadcast may continue on the allowed networks and declined on others, or it may be declined altogether.

'938 patent at 16:42–48.

Defendants argue that because the claim requires validation as a function of "one or more" of these parameters, the specification's algorithm needs to disclose validating based upon each different parameter separately. Defs. Opening Br. at 35. However, Defendants have identified no support for the idea that disclosure of separate embodiments would be required for each combination of "one or more" parameters. The specification discloses the above algorithms for validating, and it would be a simple matter of user choice to determine which algorithms (or their equivalents) to implement in a particular broadcast message distributor system. The fact that the preferred embodiment performs multiple validations as part of the admission control process does not somehow render the specification support insufficient. Defendants have presented no evidence, via expert testimony or otherwise, to the contrary.

Moreover, even if the specification is required to separately disclose algorithms for validating based on each different parameter, the specification discloses examples in which

validation steps are performed solely based on single parameters.  The specification discloses an example validation based only on the broadcast message originator identifier at step 306. ("The next process is a Security Fail process 306 that provides that the User ID is checked against the password and authentication key entered in the database.").  The specification also discloses validating solely based on the target area in the exemplary embodiment of Figure 13.  In this embodiment, the broadcast target area is compared to the jurisdiction of the broadcast message system as a whole (the PSMBS), rather than to the stored jurisdiction for the broadcast message originator identifier, and if the target area exceeds the jurisdiction of the PSMBS, the broadcast message record can be transmitted to a separate PSMBS for the jurisdictions (elements 1304 and 1306).  *See '938* patent at 37:21–39.  The specification also discloses validating solely based on the message network parameter, in that "some networks may accept some channels while others do not."  *Id.* at 16:42–48.

> **3.**  **The specification discloses an algorithm for the broadcast admission control module to generate a validated broadcast message record as a function of the validating.**

Element 220 of Figure 2 also performs the function of generating a validated broadcast message record as a function of the validating.  The specification discloses a relatively simple algorithm for this simple function:

> However, **if the broadcast message has not been declined for the particular network**, then the message is passed on to a Copy to Broadcast Request Distributor 342 process. In process 342 a copy of all or the relevant parts of the Broadcast Request is **sent to the Broadcast Distributor 224 or placed in a queue**.

'938 patent at 25:56–61 (emphasis added).

**4.      The specification discloses an algorithm for the broadcast message distributor module to receive the validated broadcast message record.**

The specification support for the broadcast message distributor module includes the distributor module designated as element 224 of Figure 2.  Plfs. Opening Br. at 26.  In light of the specification's disclosure (as discussed above) that the admission control module sends the validated message record directly to the Broadcast Distributor or places it in a queue, the specification discloses an algorithm for this module to receive the validated broadcast record.  The broadcast message distributor module receives the validated broadcast record directly from the admission control module, or it reads it from the queue.  '938 patent at 25:56–61.

**5.      The specification discloses an algorithm for the broadcast message distributor module to transmit the broadcast message and the broadcast target area, or a part thereof, to an output interface configured for distributing the broadcast message to at least a portion of the broadcast target area.**

Element 224 of Figure 2 (the software of the message distributor module) also performs the function of transmitting the broadcast message and the broadcast target area, or a part thereof, to an output interface configured for distributing the broadcast message to at least a portion of the broadcast target area.   The specification discloses two different situations encountered by the distributor module and discloses an algorithm used to transmit the broadcast message in each case:

> Once Admission Control 220 has authenticated and approved the transmission of the Broadcast Request, the message and broadcast target area information is submitted to the Distributor 224 for transmission to Participating Networks 112 for message distribution. If the carrier has provided its facility, network addresses or location coverage area data to the PLBS-SB 102, the Distributor 224 converts the target area map parameters entered by the Broadcast Agent into a network addresses and transmits the message parameters and associated network addresses to the carrier via the carrier's Carrier Broadcast Center 114.  For carriers that elect not to provide the PLSB-SB 102 the details of the networks including the network facility addresses, the Distributor 224 transmits the message and the target broadcast area coordinates of the target broadcast area to the carrier. The carrier

performs the required conversions of target broadcast area to network or location addresses, such as cell site identifiers.

'938 patent at 17:17–34.  The specification provides additional definition of the algorithm used:

> A Distributor 224 receives the broadcast message request and maps the Broadcast Agent's broadcast target area to determine which broadcast distribution networks 112 or network service providers have networks providing distribution systems serving the broadcast target area.  Once the distributor 224 has identified the broadcast distribution networks for the broadcast target area, it determines whether the broadcast distribution network 112 has its own Cell Broadcast Center 114 and an associated service bureau 102 (identified as CBE for Cell Broker Entity) to Cell Broadcast Center 114 (CBE-CBC) interface.

*Id.* at 13:33–43.

This level of algorithm specification is significantly more detailed than that approved by the Federal Circuit in *Noah* and *Typhoon Touch* and does not depend upon the specifics of the "Presswood Algorithm."  Defendants also argue that the specification does not disclose how the "remote selector" distributes the broadcast message to at least a portion of the target area.  Defs. Opening Br. at 39.  However, this is not required by the claim.  The specification states that the message broadcasting system does not actually control the equipment used by the network operators to distribute the message:

> Since the actual broadcast is managed by each participating local carrier through the carrier's network of gateways and switches, the PLBS-SB 102 does not have any further influence on the process after the message/target broadcast information has been sent to the participating carriers cell broadcast center 114.

*Id.* at 15:24–29.  Claim 1 requires transmission of the broadcast message and target area to an output interface configured for distributing the broadcast message to at least a portion of the broadcast target area and does not require actual message  transmission.  Defendants have not alleged that "output interface" is a means-plus-function term.

**B.      Conclusion on Alleged Means Plus Function Terms**

Defendants are incorrect at every level of their means plus function arguments.  First, the claim terms are not means plus function terms.   Second, even if they were, the patent specification discloses sufficient corresponding structure, and Defendants have not shown otherwise, much less by clear and convincing evidence.  As a result, Defendants have failed to show invalidity, and Plaintiffs' claim construction should be adopted.

**VII.    Claim Construction Hearing**

The present brief and one being filed by Defendants simultaneously will close the briefing on claim construction issues.  The Scheduling Order (Dkt. No. 47) states that Chambers will contact counsel for the parties to schedule a claim construction hearing.  Plaintiffs stand ready to participate in a claim construction hearing at the Court's earliest convenience.


Dated:  May 24, 2017.                            Respectfully submitted,

CELLCAST TECHNOLOGIES, LLC
AND ENVISIONIT, LLC

By: */s/ Peter J. Chassman*
Peter J. Chassman
REED SMITH LLP
811 Main Street
Suite 1700
Houston, TX 77002-6110
Telephone:     (713) 469-3885
Facsimile:      (713) 469-3899
Email: PChassman@reedsmith.com

*Counsel for Plaintiffs CellCast Technologies, LLC*
 *and EnvisionIT, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 24th day of May, 2017, a true and correct copy of the foregoing document was served on all interested parties via electronic service through the Court's ECF system:

Nicholas J. Kim
Walter Brown
David M. Ruddy
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C.
20530Nicholas.j.kim@usdoj.gov
david.ruddy@usdoj.gov
Walter.Brown2@usdoj.gov

*Counsel of Record for Defendant*
*The United States of America*

Mark J. Abate
Dietrich Brown
Calvin E. Wingfield, Jr.
Shaun de Lacy
Alexandra Valenti
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
mabate@goodwinlaw.com
DBrown@goodwinlaw.com
cwingfield@goodwinlaw.com
SdeLacy@goodwinlaw.com
CWingfield@goodwinlaw.com

*Attorneys for Third-Party Defendant*
*International Business Machines Corp.*

*/s/ Peter J. Chassman*
Peter J. Chassman

30