**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

CELLCAST TECHNOLOGIES, LLC and
ENVISIONIT LLC,

           Plaintiffs,

    v.

THE UNITED STATES,

           Defendant,

    and

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

           Third-party Defendant.

No. 15-1307

Judge Victor J. Wolski

**THE UNITED STATES' AND INTERNATIONAL BUSINESS MACHINES
CORPORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     RESPONSE TO PLAINTIFFS' DESCRIPTION OF BACKGROUND TECHNOLOGY
        AND LEVEL OF SKILL IN THE ART ...................................................................... 1

III.    ARGUMENT ............................................................................................................... 2

        A.      The Court Should Construe "Broadcast" According to Its Plain Meaning in View
                of the Specification. ........................................................................................ 2

        B.      The Court Should Construe "Broadcast Message" According to Its Plain and
                Ordinary Meaning ............................................................................................ 7

        C.      The Court Should Construe "Broadcast Message Record / Broadcast Request /
                Broadcast Message Request" Consistent with the Intrinsic Evidence. ................. 9

        D.      The Court Should Construe "Broadcast Message Originator" and "Broadcast
                Agent" Consistent with the Intrinsic Evidence to Refer to "A Person." .............. 11

        E.      "Broadcast Message Originator Identifier" Refers to a Piece of Information. ...... 15

        F.      Plaintiffs' Construction of "Broadcast Message Originator Parameter" Is Vague
                and Not Supported by the Specifications. ........................................................... 16

        G.      Adopting Plaintiffs' Construction of "Common Alerting Protocol" Would Violate
                Basic Claim Construction Principles. ................................................................. 17

        H.      The Court Should Adopt Defendants' Proposed Construction for "Generating a
                Validated Broadcast Message Record". ............................................................... 18

        I.      The Specification Fails to Disclosure Corresponding Structure for the "Module"
                Limitations Recited in Claims 1 and 11-13 of the '938 Patent Are Invalid As
                Indefinite, Because They Recite Function Without Corresponding Disclosure of
                Structure .......................................................................................................... 19

                1.      Clarification of Relevant Law of Functional Claiming ............................ 19

                2.      Plaintiffs' "Module" Limitations Clearly Invoke 35 U.S.C. § 112, ¶6,
                        Because They Lack Structure ................................................................. 21

                3.      The '938 Patent Fails To Disclose and Clearly Link Algorithms
                        Corresponding to Each of the Functions Required To Be Performed by
                        Plaintiffs' "Modules" ........................................................................... 23

IV.     CONCLUSION ........................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Abbott Diabetes Care Inc.*, 696 F.3d 1142 (Fed. Cir. 2012)....................5

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341 (Fed. Cir. 2016) ..............19, 22

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236 (Fed. Cir. 2007) ..............18

*Apple Inc. v. Motorola, Inc.*, No. 1:11-cv-08540,
   2012 WL 8123793 (N.D. Ill. Mar. 12, 2012).......................................4

*Aristocrat Techs. Aus. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008) .................25

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573 (Fed. Cir. 1996)...........................15

*August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278 (Fed. Cir. 2011) ..........................................18

*Automotive Techs. Int'l, Inc. v. Delphi Corp.*, No. 08-11048,
   2009 WL 2960698 (E.D. Mich. Sept. 11, 2009)...................................4

*Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371 ..............................................................25

*BMC Resources, Inc. v. Paymentech, L.P.*, No. 3-03-Cv-1927-M,
   2004 WL 2534240 (N.D. Tex. Nov. 4, 2004).....................................14

*Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343 (Fed. Cir. 2010) ...................................................10

*Control Resources, Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121 (D. Mass. 2001).....................4

*Datascape, Inc. v. Sprint Spectrum, L.P.*, No. 1:09-CV-0136-CC,
   2013 WL 11901528 (N.D. Ga. Feb. 5, 2013) ....................................17

*Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298 (Fed. Cir. 2001) ........................................11

*Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008) .........................................23

*Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367 (Fed. Cir. 2005)....................................10

*Glaxo Grp. Ltd. v. Teva. Pharm. USA, Inc.*, No. 07-713-JJF,
   2009 WL 1220544 (D. Del. Apr. 30, 2009).......................................13

*Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996) .................................20

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008)............6

*Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329 (Fed. Cir. 2011)................................................7, 8

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**CASES**

*IPXL Holdings v. Amazon.com*, 430 F.3d 1377 (Fed. Cir. 2005) ..................................20

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308 (Fed. Cir. 2003)...............25

*Medtronic, Inc. v. Edward Lifesciences Corp.*, No. 11-1650,
2013 WL 2147909 (D. Minn. May 16, 2013) ...................................................................13

*Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005) ...................................25

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004)....................................11

*Microunity Sys. Eng'g, Inc. v. Dell, Inc.*, No. 2-04-cv-120,
2005 WL 2086026 (E.D. Tex. Aug. 29, 2005) ...................................................................4

*Noah Sys. v. Intuit Inc.*, 675 F.3d 1302 (Fed. Cir. 2012) .....................................................18, 22, 24

*Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144-46 (Fed. Cir. 2005) .........................................11

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ........4

*O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997) ....................................................19, 20

*PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359 (Fed. Cir. 2005)....................16

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...................................................1, 7, 8, 16

*Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1325 (Fed. Cir. 2008)..............................................6

*SAES Getters, S.p.A. v. Aeronex, Inc.*, No. 02CV612-B,
2003 WL 25787588 (S.D. Cal. July 15, 2003) ...................................................................4

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)..............................9

*Unique Concepts, Inc. v. Brown*, 939 F.2d 1558 (Fed. Cir. 1991) ...............................................24

*Va. Innovation Sciences, Inc. v. Samsung Elecs. Co.*, 614 F. App'x 503 (Fed. Cir. 2015) .......9, 13

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ...................................19, 20, 21

**TABLE OF AUTHORITIES**
(CONTINUED)

**STATUTES**

35 U.S.C. § 112, ¶6 ............................................................................................... 18-22


**OTHER AUTHORITIES**

Robert C. Faber, LANDIS ON MECHANICS OF PATENT CLAIM DRAFTING (2001) ..........................20

Antonin Scalia & Bryan Garner, READING LAW:
    THE INTERPRETATION OF LEGAL TEXTS (2012)................................................................24

## I.    INTRODUCTION

The Court should reject Plaintiffs' proposed constructions and instead adopt Defendants' constructions for the disputed claim terms.  Defendants propose that the claim terms' plain and ordinary meaning to one of ordinary skill control and have grounded their proposals in the intrinsic evidence.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (citations omitted).  In contrast, Plaintiffs largely ignore the intrinsic evidence and instead attempt to buttress their arguments with hyperbolic examples, conclusory allegations and arguments untethered from the intrinsic evidence.[1]  As explained below, the Court should adopt Defendants' proposed constructions, which are consistent with the intrinsic evidence.

## II.    RESPONSE TO PLAINTIFFS' DESCRIPTION OF BACKGROUND TECHNOLOGY AND LEVEL OF SKILL IN THE ART

Plaintiffs' discussion of the background technology fails to cite anything describing or illustrating aspects of cell broadcast technology, and any purported advantages over other messaging methods.  Plaintiffs' description therefore is nothing more than attorney argument, and has no bearing claim construction.  Plaintiffs also failed to propose the level of ordinary skill in the art, which is the perspective from which the claims must be construed.  *Cf.* DBr. at 10, n.8 (Defendants' proposal).

---

[1] By relying only on attorney argument (*i.e.*, failing to cite to any intrinsic or extrinsic evidence) for certain disputed claim terms, Plaintiffs have waived their opportunity to later introduce evidence to support their proposed constructions as to those terms.  *See*, *e.g.*, Plaintiffs' Opening Brief (D.I. 53, "PBr.") at 18−20 (relying solely on attorney argument for the "broadcast message originator," "broadcast agent" and "broadcast message originator identifier").

## III.    ARGUMENT

### A.    The Court Should Construe "Broadcast" According to Its Plain Meaning in View of the Specification.

| CLAIMS | DEFENDANTS' CONSTRUCTION | PLAINTIFFS' CONSTRUCTION |
|---|---|---|
| **'938 patent**: 1, 11, 12, 13, 42, 47, 57<br><br>**'719 patent**: 14, 15, 23, 27, 30<br><br>**'221 patent**: 19<br><br>**'212 patent**: 13, 14, 15, 20<br><br>**'954 patent**: 17, 23 | wide dissemination over a communications network including, but not limited to, cellular carriers, digital private radio systems, private radio systems, internet, wireline telecommunications, satellite, and CATV systems | Plaintiffs contend that "broadcast" need not be construed because other encompassing terms already include it – such as: "broadcast message," "broadcast message record," and others below.<br><br>However, to the extent the Court elects to construe "broadcast": transmission to all recipients within a target area without targeting a specific recipient |

Defendants' proposal for the term "broadcast" comports with the broad meaning intended by the specification and is consistent with a person of ordinary skill's understanding of the term. The specification discloses that the invention applies to a wide range of communications networks, ranging from cellular carriers to radio and television. '938 patent at 14:48−54 ("[T]he message is transmitted to every known operator offering coverage of the area and may include mobile carriers, digital private radio systems operators, private radio system operators, internet service providers, wireline telecommunication service providers, satellite service providers, CATV operators, etc.").[2]  Dependent claims of the asserted patents confirm the intended breadth of "broadcast."  *See, e.g.*, '954 patent at cl. 23 ("message broadcast message transmission systems selected from the group consisting of a wireless mobile carrier network; . . . ; a radio

---

[2]    *See also* '938 patent at 4:63−5:3 ("Local broadcast message network operators and/or telecommunications service providers, such as mobile or cellular telephone service carriers"), 6:17−25 (describing "various communication networks," including "cellular").

system; and a television system"), cl. 6 (reciting "wireless cellular network transmitters"); '221 patent at cl. 10 (same).  Plaintiffs also provide no evidence supporting their negative limitations (*i.e.*, "within a target area without targeting a specific recipient").

Plaintiffs criticize Defendants' proposal for purportedly introducing ambiguity into the claims.  *See* Plaintiffs' Opening Brief (Dkt. No. 53, "PBr.") at 14−15.  However, neither the phrase "wide dissemination" nor the inclusion of exemplary broadcast networks render them confusing, let alone indefinite.

With respect to "wide dissemination," this aspect of Defendants' proposal is supported by the specification (as described above) and Plaintiffs' own extrinsic evidence (the *Microsoft Computer Dictionary*), which defines a "broadcast message" as being "distributed to all stations."  PBr., Ex. 2 (Dkt. No.  53−2) at 4.  At the same time, the dictionary lends no support to the negative limitations of Plaintiffs' proposal, which limit dissemination to a "target area without targeting a specific recipient."  Further, "wide dissemination" properly describes the breadth with which a message is distributed when broadcast (*i.e.*, broadly), and properly avoids imposing artificial constraints of geography (*i.e.*, Plaintiffs' proposed "within a target area") that are addressed by other claim terms (see below) or prescribing a specific technical implementation (*i.e.*, Plaintiffs' proposed "without targeting a specific recipient") that Plaintiffs declined to expressly claim.  Plaintiffs' arguments (PBr. at 14) relating to "large or small" areas are not relevant to the term "broadcast" on its own.  For example, a message may be widely disseminated within a target area whether that target area is large or small.  Moreover, Plaintiffs' objection to "wide dissemination" as being a non-technical term disregards that claims are construed to assist the factfinder—who is assumed not to have a scientific or technical

background—to understand the meaning of the claims.[3]  Thus, nothing about the phrase "wide dissemination" conflicts with the plain claim language.

Plaintiffs' objections (PBr. at 14) to Defendants' inclusion of exemplary broadcast networks also are without merit.  Courts have construed terms to include similar non-exhaustive lists of examples.[4]  Further, Defendants' proposal identifies exemplary networks over which the broadcast technology disclosed and claimed in the asserted patents may be implemented.

Plaintiffs do not object to any particular exemplary network listed in Defendants' proposal. Instead, Plaintiffs seek a construction that would carve out Short Messaging Service ("SMS") technology and limit the claims to "cell broadcast" technology.  PBr. at 10−13.[5]  The Court should reject Plaintiffs' proposal.

---

[3] *See O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[C]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.") (internal quotations omitted); *Apple Inc. v. Motorola, Inc.*, No. 1:11-cv-08540, 2012 WL 8123793, at *1 (N.D. Ill. Mar. 12, 2012) (Posner, J., by designation) ("No doubt the court-appointed experts could explain opaque claims constructions to the jurors, but that would waste a lot of trial time. I want the constructions themselves to be in ordinary English intelligible to persons having no scientific or technical background."); *Control Resources, Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass. 2001) ("In the end, claim construction must result in a phraseology that can be taught to a jury of lay people. It is not enough simply to construe the claims so that one skilled in the art will have a definitive meaning. The claims must be translated into plain English so that a jury will understand.").

[4] *See, e.g.*, *Automotive Techs. Int'l, Inc. v. Delphi Corp.*, No. 08-11048, 2009 WL 2960698, at *15 (E.D. Mich. Sept. 11, 2009) (providing examples in the construction of the function of "an adjustment system arranged to adjust said at least one component"); *Microunity Sys. Eng'g, Inc. v. Dell, Inc.*, No. 2-04-cv-120 (TJW), 2005 WL 2086026, at *11 (E.D. Tex. Aug. 29, 2005) (construing "Boolean mathematical operation" as "an operation that applies formal logic (for example, 'AND,' 'OR,' 'NOR,' etc.)"); *SAES Getters, S.p.A. v. Aeronex, Inc.*, No. 02CV612-B(LSP), 2003 WL 25787588, at App'x B (S.D. Cal. July 15, 2003) (construing "hydride gas" using "[p]rinciple examples").

[5] Plaintiffs' proposed distinction is even made even more nuanced, because the patents describe cell broadcast as a type of SMS technology.  *See* '938 patent at 4:58−60 ("The public service message location broadcasting system uses <u>cell-broadcast SMS</u> (C-BSMS) technology." (emphasis added)).

To start, Plaintiffs appear to equate "cell broadcast" technology with "broadcast," a proposition that can be rejected based on the words alone. *See* PBr. at 10−13. Additionally, Plaintiffs cannot dispute that, despite the term "cell broadcast" being well-known to Plaintiffs in the context of these patents, none of the asserted claims recite "cell broadcast" technology or explicitly exclude Short Messaging Service ("SMS") technology.[6] Indeed, based on a prior art article submitted by Plaintiffs to the U.S. Patent & Trademark Office, SMS-based emergency broadcast systems were not only considered suitable for emergency alerting, they were being actively pursued and implemented by municipalities before the asserted patents were filed. Ex. 1 ('954 File History, "Local Governments Look To Cellphone-Based Alerts," *Wall Street Journal* (June 12, 2003) ("WSJ Article") ("To advocates, text-messaging, also known as SMS, should be a major part of any upgrade to alert systems")).[7] Along the same lines, the asserted claims do not recite or otherwise require "efficient geotargeted messaging," or otherwise recite "geotargeted messaging," or the like, as Plaintiffs argue. *See* PBr. at 10−11. Plaintiffs' premise is further undermined by the more general recitation of "geographically defined" in some claims and not others. *Compare* '212 patent at cl. 13 (reciting "geographically defined broadcast target area") *with* '938 patent at cl. 42 (not reciting same). Similarly, nothing in the claims "necessarily implicates '[cell] broadcast'," as Plaintiffs suggest. PBr. at 11.

Plaintiffs suggest that the patents disparaged SMS so much that SMS cannot reasonably be within the scope of the claims. PBr. at 12−13 (citing *In re Abbott Diabetes Care Inc.*, 696

---

[6] "Cell broadcast" is described in the specification and recited in other, non-asserted claims and related patents. *See, e.g.*, '212 patent at cl. 11 ("a mobile carrier offering cell broadcast messaging service"); Ex. 2, U.S. Pat. No. 7,752,259 to Weiser *et al.*, at cls. 11, 18 & 22 (reciting "cell broadcast channel codes").

[7] Because the file history copy omitted several pages of the article, Exhibit 1 includes a full copy of the WSJ Article.

F.3d 1142 (Fed. Cir. 2012)).  However, the patents fall far short of disparaging SMS to the extent that one of ordinary skill in the art would clearly understand that they were disclaimed as a broadcast method.  For example, although the patent describes SMS-based systems as "disappointing" due to technical limitations, the patent still recognizes SMS-based systems as "[o]ne <u>suggested</u> solution."  '938 patent at 1:38−46 (emphasis added).  Plaintiffs' own submission to the PTO confirms that SMS-based emergency broadcast systems were not only considered suitable for emergency alerting by the alerting community, these systems were being actively pursued, tested and implemented by private and public entities.  Ex. 1, WSJ Article.

Plaintiffs' proposed limitations (*i.e.*, "within a target area without targeting a specific recipient") are improper for two additional reasons.  First, they are based on the purported purpose of the claimed systems and methods, which Plaintiffs characterize as "utiliz[ing] broadcast technology to achieve efficient geographically targeted emergency alert message delivery."  *See* PBr. at 10−13.  However, courts have repeatedly cautioned against limiting claims to the described purpose of a claimed invention.  *See, e.g., Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1325 (Fed. Cir. 2008) ("[I]t is generally not appropriate to limit claim language to exclude particular devices because they do not serve a perceived purpose of the invention.") (internal quotations omitted); *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1344−45 (Fed. Cir. 2008) (rejecting argument that construction of term should include the purpose of the claimed device).  Second, Plaintiffs' proposed construction would render superfluous many other <u>recited</u> limitations of the asserted claims.  For example, every asserted claim of the asserted patents explicitly recites "a broadcast target area."  *See, e.g.,* '938 patent at 39:21−22 (claim 1) (directed to a "message broadcasting system providing a broadcast message to a broadcast target area").  Because the asserted claims refer to a "target area" independent of

the term "broadcast," the term "broadcast" cannot itself include the "within a target area without targeting a specific recipient" limitation that Plaintiffs propose.  *See Phillips*, 415 F.3d at 1314 (finding that the term "steel baffles" "strongly implies that the term 'baffles' does not inherently mean objects made of steel."); *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1334−38 (Fed. Cir. 2011) (construing "asymmetrically located" to require an element not be located on the same longitudinal axis as another, where another claim specifically required longitudinal asymmetry).

Plaintiffs had ample ability and opportunity to either specifically disclaim SMS or to narrowly claim cell broadcast technologies.  Instead, Plaintiffs drafted broad claims to hedge their bets on whether SMS or cell broadcast technology would eventually prevail in the marketplace.  Claim construction cannot be used to alter *ex post* Plaintiffs' intended claim scope.  Accordingly, the Court should reject Plaintiffs' attempt to rewrite its claims to avoid prior art SMS systems, and instead, adopt Defendants' construction of the term "broadcast."

**B.    The Court Should Construe "Broadcast Message" According to Its Plain and Ordinary Meaning.**

| CLAIMS | DEFENDANTS' CONSTRUCTION | PLAINTIFFS' CONSTRUCTION |
|---|---|---|
| **'938 patent**: 1, 11, 42 <br> **'719 patent**: 14, 23 <br> **'221 patent**: 19 <br> **'212 patent**: 13, 14, 20 <br> **'954 patent**: 17 | a message that is intended for distribution | message that is intended for distribution to all recipients within a target area and is not targeted to a specific recipient |

Both parties agree that a "broadcast message" is "a message that is intended for distribution."  Defendants propose that the construction of this term ends there.  On the other hand, Plaintiffs proposal goes further to define the intended recipients of the message—namely, "all recipients within a target area and is not targeted to a specific recipient."

Plaintiffs' proposal, however, suffers from the same flaw as their proposal for "broadcast."  All claims reciting the "broadcast message" term already recite a "broadcast target

area" limitation. See, e.g., '938 patent at cl. 1 ("A message broadcasting system providing a broadcast message to a broadcast target area . . ."); '719 patent at cl. 14 (". . . receiving a broadcast message record having a broadcast message, a defined broadcast target area, and a broadcast message originator identifier . . ."); '954 patent at cl. 17 (". . . receiving over an input interface a plurality of broadcast message requests, each broadcast message request including . . . a geographically defined broadcast target area, and a broadcast message . . .").

Plaintiffs' proposed "to all recipients within a target area" limitation is also inconsistent with the plain language of claim 1 of the '938 patent and claim 19 of the '221 patent, which recite "distributing the broadcast message to at least a portion of the broadcast target area" and "transmitting the broadcast message over an output interface to one or more coupled broadcast message networks providing broadcast message alerting service to at least a portion of the broadcast target area," respectively.

"Broadcast message," therefore, does not itself include the "target area" recited elsewhere in the claims. *See Phillips*, 415 F.3d at 1314; *Hologic*, 639 F.3d at 1334−38.  Thus, for the same reasons stated above and in Defendants' Opening Claim Construction Brief, the Court should reject Plaintiffs' proposal and instead adopt Defendants' construction of "broadcast message."

### C. The Court Should Construe "Broadcast Message Record / Broadcast Request / Broadcast Message Request" Consistent with the Intrinsic Evidence.

| CLAIMS | DEFENDANTS' CONSTRUCTION | PLAINTIFFS' CONSTRUCTION |
|---|---|---|
| **'938 patent**: 1, 42, 47, 57<br>**'719 patent**: 14, 23, 30<br>**'221 patent**: 19<br>**'212 patent**: 13, 15, 20<br>**'954 patent**: 1, 4, 17 | data associated with a proposed broadcast message | a populated data structure that includes a broadcast message (as construed) and associated information |

Defendants' proposed construction for the terms "broadcast message record," "broadcast request," and "broadcast message requests"—"data associated with a proposed broadcast message"—is consistent with how the use of those terms in the intrinsic evidence. Indeed, the parties generally agree that the terms relate to the recited "broadcast message" and contain data or information "associated" with the broadcast message.

Plaintiffs' proposal (*see* PBr. at 16) improperly limits these terms to "a populated data structure." Plaintiffs allege that "[t]he context of the asserted claims effectively defines these terms and makes it clear that these 'records' and 'requests' are data units that include the broadcast message and one or more other data elements." *Id.* at 17−18. But nothing in the asserted claims suggests the way the underlying components of the broadcast message request or record are stored or organized by the system. And Plaintiffs fail to identify any portion of the intrinsic evidence that defines or otherwise limits a broadcast message request or record to a "populated data structure," "data elements," or "data units." *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366–67 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear and unmistakable disclaimer."). Nor has Plaintiffs identified any extrinsic evidence supporting their proposed construction. Instead, Plaintiffs rely upon

unsubstantiated attorney argument, which is neither relevant intrinsic or extrinsic evidence. *See Virginia Innovation Sciences, Inc. v. Samsung Elecs. Co.*, 614 F. App'x 503, 511 (Fed. Cir. 2015) (reversing district court's construction that "relied on the parties' arguments introducing the notion of signal deconstruction and reassembly at the external monitor," because "attorney arguments are not relevant intrinsic or extrinsic evidence").

Moreover, Plaintiffs' proposal to limit the "broadcast message record," "broadcast request," and "broadcast message requests" terms to a preferred method of practicing the invention should be rejected—particularly because the specifications do not even refer to a "populated data structure" as a preferred embodiment. *See Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) (rejecting proposed construction of "case" as requiring an enclosure where a "six-sided rectangular enclosure" was disclosed as a preferred embodiment, because "[t]he patent specification does not assign or suggest a particular definition to the term 'case'"); *The Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005) (finding district court erred in construing claims as limited to razors with only three blades, a preferred embodiment, where the specification and the use of open claim terminology suggested the claims were not so limited).

**D.** **The Court Should Construe "Broadcast Message Originator" and "Broadcast Agent" Consistent with the Intrinsic Evidence to Refer to "A Person."**

| CLAIMS | DEFENDANTS' CONSTRUCTION | PLAINTIFFS' CONSTRUCTION |
|---|---|---|
| **'938 patent**: 1, 11, 12, 13, 42 <br> **'719 patent**: 14, 15, 23, 27 <br> **'221 patent**: 19 <br> **'212 patent**: 13, 14, 15 <br> **'954 patent**: 1, 17, 23 | a person who submitted a proposed broadcast message | a person or entity that requests the transmission of a broadcast message |

Defendants' proposed construction of "broadcast message originator" and "broadcast agent" is consistent with use of those terms in the intrinsic evidence. As explained in Defendants' opening brief, the specifications consistently refer to the "broadcast agent" or "broadcast originator" as a person who submitted a proposed broadcast message. DBr. at 19–20.

Plaintiffs assert that the Court should reject Defendants' proposal because it purportedly limits the claims to aspects of a preferred embodiment—namely, that the "broadcast message originator" or "broadcast agent" is a person. PBr. at 18-19. But the concept that the "agent" and "originator" are persons is not merely a characteristic of a "preferred embodiment described in the specification," as Plaintiffs suggest. Rather, the specifications "repeatedly and consistently" refer to the "originator" and "agent" as a person. *See Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144-46 (Fed. Cir. 2005) (affirming construction of "board" as being "cut from a log" based on consistent usage in the written description); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1347−49 (Fed. Cir. 2004); DBr. at 19−22. Defendants' construction, therefore, is consistent with **all** examples of the "originator" and "agent" in the specification and does not improperly import a limitation of the preferred embodiment into the claims. *See Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1303−04 (Fed. Cir. 2001) (construing "oxide coating" as

11

"primarily compris[ing] metal oxide compounds" because, *inter alia*, all examples in the specification contained only metal cations and oxygen). In addition to repeatedly referring to the agent or originator using "he" or "his," the specification consistently describes "individual" users, as opposed to organizations.[8] Indeed, a person's use of a graphical user interface ("GUI"), such as a web portal, to input the relevant information for a particular broadcast message is central to the entire operation of the asserted patents, which are intended to allow an individual police officer to initiate a broadcast message.[9] The patent emphasizes the GUI so a user (*i.e.*, a person) can "click" to accomplish his or her objectives.[10] Of course, only people—not entities— can click, press buttons, and draw using a GUI. And certainly, only a person, and not an "entity," can "think" or "feel." '938 patent at 26:7−13 ("A Broadcast Agent may feel that the security of his account profile has been breached . . ."), 8:3−4 ("This may cause the Broadcast

---

[8] *See, e.g.*, '938 patent at 30:66−31:4 ("For example, the message has been defined for transmission within <u>his</u> jurisdiction. There may be restrictions on how many messages one individual <u>or</u> center may send in a period. This may be defined by the local carriers, government <u>entities</u>, or by the PLBS-SB 102 operator.").

[9] *See, e.g.*, '938 patent at 33:60−34:7 (describing police officer accessing the web page when "[i]t is late at night and a river level is rising to dangerous levels"), Fig. 1 (illustrating the "cell @lert display" and access via a web browser), Fig. 2 (illustrating "web browser" and "web handlers"), 3:66−4:7 ("A public service message location broadcasting system (PLBS) operator provides a Broadcast Agent Web Portal or Webpage or other similar Graphical User Interface (GUI) . . . "), 29:11−25 (describing "a graphical user interface (GUI) 400"), 29:57−65 ("[T]he Broadcast Agent can utilize the GUI interface and use a shape tool to define the irregular-shaped target broadcast area").

[10] *See, e.g.*, '938 patent at 15:6−8 ("[T]he Broadcast Agent will select the message from the message library and click or press the recall button"), 16:7−9 ("When the Broadcast Agent clicks the GO-button . . ."), 17:9−12 ("Broadcast Agent clicks the 'propose' or 'GO' button . . ."), 29:36−39 (". . .within six 'Enters' or 'clicks' from the Broadcast Agent accessing the Web Portal 202."), 29:46−49 ("Preferably, the broadcast target area 502 is defined by the Broadcast Agent through a graphical selection means such as clicking a mouse on the displayed map 404 . . ."), 29:51−53 ("He then can use a Draw tool to point and click a mouse to create an area . . ."), 30:61−64 ("Once the Broadcast Agent has clicked the go-button 1008, and accepted liability for the message by typing his User ID 1004 and password 1006 . . ."), 34:5−7 ("The officer initiates the broadcast messaging by following a security procedure and clicks a go-button 1008.").

Agent to think again about conserving his quota if near his limit . . .").  Thus, far from being a limitation of a disclosed embodiment, the patents repeatedly and purposefully disclose a person as the broadcast message originator (or broadcast agent), not an entity.

Tellingly, Plaintiffs cite to no support for their proposed construction.  Instead, Plaintiffs rely on contrived hypotheticals.  Plaintiffs' "simple example" of day and night shift workers (*see* PBr. at 19), however, is inconsistent with the described operation of the system (*e.g.*, User Parameters, including User ID and password) and the actual examples of originators/agents in the specifications, such as "a Coast Guard commander," "a River Authority manager," "personnel within a police department or fire department," or a "senior police officer[] or disaster manager"—each of which is a person or persons within an entity or organization, not the entity or organization itself.  '938 patent at 7:14−29, 8:25−32, 33:64−67.  Specifically, the specifications disclose that a "Broadcast Agent Administrator" may set "restrictions or rules related to . . . one or more Broadcast Agents under its control or within its Broadcast Message Jurisdiction. For example, it may establish different levels of authority for various personnel within a police department or fire department or allocate sub-areas or sub-jurisdictions based on police or fire department sub-boundaries."  '938 patent at 8:25−32; '221 patent at 8:34−41.  Indeed, the specifications refer to the "Broadcast Agent's organization," thereby distinguishing between the broadcast agent and the organization of which he is a member. '938 patent at 7:17;

*see also* '938 patent at 10:5–12 (referring to a "group of Broadcast Agents"). Plaintiffs'

proposal, based entirely on attorney argument, should therefore be disregarded.[11]

Plaintiffs, at the eleventh hour, disclosed to Defendants that they intend to rely on 8 lines

of the specification of the '938 patent (9:63–10:3) in support of their construction for the

"originator" and "agent" terms. *See* Ex. 3, May 23, 2017 Email from P. Chassman to N. Kim

and C. Wingfield.[12]    Nevertheless, these 8 lines does not save Plaintiffs' position. Indeed, they

reinforce Defendants' proposed construction. This portion of the specification reads:

> If so, the event triggers the predefined message as set up by
> previous agreements between the Broadcast Agent Administrator
> for that organization and the Administrative Operator who
> administers the accounts on the PLBS-SB 102 in accordance with
> guidelines agreed upon by government authorities and local carriers.

'938 patent at 9:63–10:3. The specification discloses that the Broadcast Agent Administrator

manages the accounts and profiles for other broadcast "agents" within the organization. *See id.*

at 7:4–13, 9:63–10:3. Thus, the quoted passage is yet another example of the patents' consistent

distinction between an "organization" and an "agent." Moreover, the quoted passage makes

clear that when the patentee intended to refer to an "organization," it did so in explicit terms and

did not refer to the "organization" as an "agent" or "originator."

---

[11] *See Virginia Innovation Sciences*, 614 F. App'x at 511; *Medtronic, Inc. v. Edward Lifesciences Corp.*, No. 11-1650 (JNE/JSM), 2013 WL 2147909, at *29–30 (D. Minn. May 16, 2013) (rejecting proposed construction "in toto," noting "the Court is hard-pressed to make any conclusions about the direction of blood flow through heart valve orifices based solely on attorney argument"); *Glaxo Grp. Ltd. v. Teva. Pharm. USA, Inc.*, No. 07-713-JJF, 2009 WL 1220544, at *4 (D. Del. Apr. 30, 2009) ("Attorney argument and extrinsic dictionary definitions carry little weight and are an insufficient basis upon which to introduce an extraneous limitation into claims.").

[12] Plaintiffs did not rely on this portion of the intrinsic evidence in their opening brief (let alone any intrinsic evidence for this term, which the parties previously identified for the Court as being some of the "most significant" in the case), so their disclosure the day before the parties' briefs were due is materially prejudicial.

Therefore, the Court should adopt Defendants' proposed construction—"a person who submitted a proposed broadcast message"—which finds ample support in the patents and is consistent with the plain and ordinary meaning of the term of "agent."  *See* DBr. at 19−22; *BMC Resources, Inc. v. Paymentech, L.P.*, No. 3-03-CV-1927-M, 2004 WL 2534240, at *7 (N.D. Tex. Nov. 4, 2004), *adopted by*, 2004 WL 2871351 (N.D. Tex. Dec. 14, 2004) (recommending construction of "payee's agent's system" as "a system of *someone* who acts for or in the place of a payee with authority" because it was "consistent with the ordinary and customary meaning of these terms" (emphasis added)).

### E.    "Broadcast Message Originator Identifier" Refers to a Piece of Information.

| CLAIMS | DEFENDANTS' CONSTRUCTION | PLAINTIFFS' CONSTRUCTION |
|---|---|---|
| **'938 patent**: 1<br>**'719 patent**: 14<br>**'212 patent**: 13 | a piece of information identifying the broadcast message originator (as construed) | information that identifies the broadcast message originator (as construed) |

Just as with "broadcast message originator" and "broadcast agent," Plaintiffs cite nothing in the intrinsic record as support for their proposed construction of the "broadcast message originator identifier" and instead rely on another two contrived examples unsupported by the intrinsic record.  In particular, Plaintiffs state that "[a]n originator identifier could be formed by a combination of various information," and provide two examples of six-digit identifiers where every two digits conveys some attribute associated with the originator.  *See* PBr. at 19−20.  A person of ordinary skill, however, would understand that the specifications disclose that the broadcast message originator identifier is a User ID/Agent ID, which is a "piece of information identifying the broadcast message originator," consistent with Defendants' proposal.  *See* '938 patent at 24:8−11.  Thus, the Court should adopt Defendants' construction and disregard Plaintiffs' conclusory arguments.

15

**F.    Plaintiffs' Construction of "Broadcast Message Originator Parameter" Is Vague and Not Supported by the Specifications.**

| "Broadcast message originator parameter" | | |
|---|---|---|
| **CLAIMS** | **DEFENDANTS' CONSTRUCTION** | **PLAINTIFFS' CONSTRUCTION** |
| **'938 patent**: 12, 13, 42 **'719 patent**: 23, 27 | information associated with the broadcast message originator (as construed) | information regarding the broadcast message originator (as construed) |

Defendants' proposal for "broadcast message originator parameter" is consistent with the specifications disclosure of a Broadcast Agent profile that "can include any variety of user definable parameters and limits," such as "a set of user parameters 206, broadcast target area footprint parameters 208, message parameters 210, and/or status register parameters 212." '938 patent at 12:31−56; DBr. at 23−24. Plaintiffs' proposal that the broadcast message originator parameter" be any information *regarding* the broadcast message originator fails to provide concrete meaning to the term.

As Plaintiffs correctly note (PBr. at 21), the specifications provide examples of "broadcast message originator parameters" (*see* '938 patent at 13:16−22), each of which ties the parameter to the Broadcast Agent. Thus, Defendants' proposal that the information constituting the parameter is "associated" or tied to the originator is consistent with the intrinsic record and provides more meaning to the term than Plaintiffs' proposal of "regarding." Accordingly, the Court should adopt Defendants' construction. *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) ("Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower meaning.").

**G.    Adopting Plaintiffs' Construction of "Common Alerting Protocol" Would Violate Basic Claim Construction Principles.**

| CLAIMS | DEFENDANTS' CONSTRUCTION | PLAINTIFFS' CONSTRUCTION |
|---|---|---|
| **'212 patent**: 20 | the OASIS Common Alerting Protocol standard versions publicly known as of November 2005 | the protocol defined in the OASIS Common Alerting Protocol standard |

Both parties agree that "Common Alerting Protocol" refers to a standard adopted by a third party standards-setting organization (OASIS).  The parties dispute whether any version of the standard provided by OASIS falls within the scope of this limitation, or only the version in force at the filing date for the '212 patent.

Plaintiffs argue that the construction of "common alerting protocol (CAP)" should not be limited to the protocol in force at a particular time.  Yet, Plaintiffs concede that "standards setting organizations periodically update their standards."  PBr. at 22.  Consequently, Plaintiffs seem to suggest that the meaning of "common alerting protocol" in the asserted patents may change over time as the OASIS protocol is updated or revised.  But a patent "claim cannot have different meanings at different times; its meaning must be interpreted as of its effective filing date." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005).  Thus, this Court should reject Plaintiffs' proposed construction because it violates the basic principle that patent claims are construed from the perspective of a "person of ordinary skill in the art . . . *at the time of the invention*."  *See Phillips*, 415 F.3d at 1313 (emphasis added).  The

Court should adopt Defendants' proposal, which properly refers to the OASIS Common Alerting

Protocol in effect as of the alleged invention here.[13]  *See* DBr. at 25−26.

### H.    The Court Should Adopt Defendants' Proposed Construction for "Generating a Validated Broadcast Message Record."

| CLAIMS | DEFENDANTS' CONSTRUCTION | PLAINTIFFS' CONSTRUCTION |
|---|---|---|
| **'938 patent**: 1<br>**'719 patent**: 14<br>**'212 patent**: 13 | after validating, creating a broadcast message record (as construed) that further includes data indicating successful validation | creating a broadcast message record (as construed) which the system or method has determined to be valid |

Plaintiffs' argument regarding "generating a validated broadcast message record" is

internally inconsistent and should not be adopted.  While Plaintiffs' propose that "generating" be

construed as "creating," Plaintiffs' argument relies entirely on portions of the specification

referring to "copying" a broadcast message record.  *See* PBr. at 22−23.  The portions of the

specification relied on by Plaintiffs therefore do not support Plaintiffs' proposed construction.

Likewise, Plaintiffs seem to suggest that because one example in the specification

includes the "copying" of a broadcast message record, then "generating" must include

"copying."  However, "generating a validated broadcast message record" is not a limitation of all

claims of the '938 patent family.[14]  For instance, claim 42 of the '938 patent does not include the

"generating" term, nor do any claims dependent thereon.  The "copying" example pointed to by

---

[13] Plaintiffs contend that "[c]laim terms typically are not construed to include the year of public awareness."  D.I. 53 at 22.  But at least one court construed a similar term ("extended open network protocol") as "an open network protocol *published or publicly available at the time of the filing date*" of the asserted patent.  *See Datascape, Inc. v. Sprint Spectrum, L.P.*, No. 1:09-CV-0136-CC, 2013 WL 11901528, at *3, Attach. A (N.D. Ga. Feb. 5, 2013) (emphasis added).

[14] The '938 patent family includes the '938, '719 and '212 patents, while the '221 patent family includes the '221 and '954 patents.  The "generating" term is not present in the claims of the '221 patent family.

Plaintiffs, then, may embody claim 42 of the '938 patent and not claim 1. In short, that certain claims directed to "generating" do not encompass certain embodiments described in the specification is hardly remarkable and, in any event, provides no support for Plaintiffs' position.[15]

## I.    The Specification Fails to Disclosure Corresponding Structure for the "Module" Limitations Recited in Claims 1 and 11-13 of the '938 Patent Are Invalid As Indefinite, Because They Recite Function Without Corresponding Disclosure of Structure.

Plaintiffs provide no evidence, intrinsic or otherwise, that despite the functional language recited in the "module" limitations of claims 1 and 11−13 of the '938 patent, those limitations recite sufficient structure to avoid the ambit of 35 U.S.C. § 112, ¶ 6. They do not. Yet the specification fails to disclose any structure (*i.e.*, algorithms) that perform the recited functions of those limitations. Because the alleged algorithms identified by Plaintiffs do not support each recited function of these "modules," the specification fails to disclose sufficient structure under 35 U.S.C. § 112, ¶ 6. In other words, it is "as if no algorithm has been disclosed at all." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318−19 (Fed. Cir. 2012).

### 1.    Clarification of Relevant Law of Functional Claiming

Plaintiffs' Opening Brief obfuscates three basic principles of the law of functional claiming. These are clarified below.

---

[15] *See August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1285 (Fed. Cir. 2011) ("The mere fact that there is an alternative embodiment disclosed in the [asserted patent] that is not encompassed by [our] claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence. This is especially true where, as here, other unasserted claims in the parent patent cover the excluded embodiments." (citations and quotations omitted)); *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1248 ("[T]his court enforces a presumption that each claim in a patent has a different scope. Thus every claim need not contain every feature taught in the specification." (citations and quotations omitted)).

First, Plaintiffs improperly rely (PBr. at 24) on the strength of the rebuttable presumption that claims not explicitly reciting "means for" are presumed not to invoke interpretation under 35 U.S.C. § 112, ¶ 6.  The Federal Circuit's *en banc* decision in *Williamson* expressly abandoned the erstwhile "heightened bar to overcoming the presumption that a limitation expressed in functional language without using the word 'means' is not subject to § 112, para. 6," because the Court found that the "heightened burden is unjustified."  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015).  The prior "characterization is unwarranted, is uncertain in meaning and application, and has the inappropriate practical effect of placing a thumb on what should otherwise be a balanced analytical scale.  It has shifted the balance struck by Congress in passing § 112, para. 6 and has resulted in a proliferation of functional claiming untethered to § 112, para. 6 and free of the strictures set forth in the statute."  *Id.*  Rebutting the presumption requires proof only "by a preponderance of the evidence."  *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347 (Fed. Cir. 2016).  Indeed, the Federal Circuit has repeatedly invalidated functional claims that did not recite "means."  *See, e.g.*, *id.* at 1348-50 (finding "symbol generator" to be indefinite); *Williamson*, 792 F.3d at 1349−51 (finding "distributed learning control module" to be indefinite); *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1101–02 (Fed. Cir. 2014).

Second, Plaintiffs incorrectly conflate the means-plus-function doctrine applicable to system claims (*e.g.*, claim 1 of the '938 patent) with the *step*-plus-function doctrine applicable to method claims (*e.g.*, claim 42 of the '938 patent) to suggest that reciting "structure (in the form of specific software and specific steps for the software to perform)" permits Plaintiffs' claims from escaping 35 U.S.C. § 112, ¶ 6 interpretation.  *See* PBr. at 26 (citing to a concurring opinion describing the step-plus-function claim format).  *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576,

1582−83 (Fed. Cir. 1997) (describing the distinction between means-plus-function and step-plus-function claims).[16]  Claim 1 is *not* a method claim, so Plaintiffs' sole cited authority is inapposite.  Plaintiffs also fail to make any showing that Claim 1 recites "sufficient acts," let alone why such "acts" are distinguishable from "functions" to somehow avoid interpretation under 35 U.S.C. § 112, ¶ 6.  Moreover, to adopt Plaintiffs view would transform Claim 1—a system claim—into a "hybrid" system/method claim, which would be invalid as indefinite.  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383−84 (Fed. Cir. 2005) (reciting the "well recognized" principle that "a single claim covering both an apparatus and a method of use of that apparatus" is indefinite (citing Robert C. Faber, Landis on Mechanics of Patent Claim Drafting § 60A (2001) ("Never mix claim types to different classes of invention in a single claim.")).  Accordingly, Plaintiffs' attempt to confuse claim construction doctrines is unavailing.

### 2.    Plaintiffs' "Module" Limitations Clearly Invoke 35 U.S.C. § 112, ¶6, Because They Lack Structure.

To avoid interpretation under 35 U.S.C. § 112, ¶ 6, the words of the claim must "have a sufficiently definite meaning as the name for structure."  *Williamson*, 792 F.3d at 1349 (citing *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)).  Plaintiffs' Opening Brief, without any legal or factual support, suggests that "broadcast admission module" and "broadcast message distributor module" are, on their faces, "directed to structure."  PBr. 25,

---

[16]  *O.I. Corp.*, decided more than a decade ago, is clear:

> The word 'means' clearly refers to the generic description of an apparatus element, and the implementation of such a concept is obviously by structure or material.  We interpret the term 'steps' to refer to the generic description of elements of a process, and the term 'acts' to refer to the implementation of such steps.  This interpretation is consistent with the established correlation between means and structure.  In [35 U.S.C. § 112, ¶6], structure and material go with means, acts go with steps.

*Id.* at 1582−83.

28.  As discussed below, Plaintiffs' proposition cannot be supported.[17]

Plaintiffs do not dispute that "module" is a well-known nonce word operating as a substitute for "means."  *See Williamson*, 792 F.3d at 1350; Ex. 20 at 346.  Moreover, neither of the descriptive clauses preceding "module" (*i.e.*, "broadcast admission" and "broadcast message distributor") sufficiently define structure.  *See, e.g.*, DBr., Ex. 12, *Newton's Telecom Dictionary*, at "broadcast" (describing how a message is sent); Ex. 4, *Oxford English Dictionary* 3d ed. (2011), at "admission" (describing acts of admitting and the process of acceptance), at "distributor" (defining the term using conjugations of the verb, "distribute").  Aside from their traditional meanings, these terms did not have a well-known meaning in the art, let alone a meaning that included sufficiently definite structure.  *See*, *e.g.*, Ex. 5, excerpts from *Microsoft Computing Dictionary* (lacking definitions of "broadcast admission," "admission control," or "message distributor").  The specification reinforces the functional nature of the "admission" and "distributor" modules.[18]  Accordingly, Plaintiffs cannot claim that "broadcast admission control" and "broadcast message distributor" constitute structure, let alone sufficient structure to avoid interpretation as means-plus-function terms under 35 U.S.C. § 112, ¶6.

Moreover, Plaintiffs fail to identify any structure in the remaining portions of either

---

[17]  In what appears to be an alternative argument, Plaintiffs assert that Claim 1 should not be interpreted under 35 U.S.C. § 112, ¶6 at all, because it "contains [] structure [] in the form of specific software and specific steps for the software to perform."  PBr. at 26.  But by arguing that software can substitute for structure, Plaintiffs adopt exactly what they seek to avoid: that the claims are governed by 35 U.S.C. § 112, ¶6, in which case software could constitute structure.

[18]  *See*, *e.g.*, '938 patent at 16:7−11 (describing that "the Admission Control Subsystem 220 . . . checks all the parameters of the Broadcast Agent and message to *determine if the message will be admitted* or declined" (emphasis added)); *id.* at 14:12−15 (describing that "[t]he distributor 224 *sends the broadcast message* along with a coordinate-defined broadcast target area over the CBE-CBC interface 226 to the appropriate cell broadcast centers 114." (emphasis added)); *id.* at 17:21−34 (describing the "the Distributor 224 . . . *transmits* the message parameters and associated network addresses" or "*transmits* the message and the target broadcast area coordinates of the target broadcast area" to the carrier (emphasis added)).

"module" limitation, which describe these modules' respective functions.  For example, the "broadcast admission module" is "configured for receiving . . . , validating . . ., [and] generating . . . ."  '938 patent at cl. 1.  None of the three recited functions (*i.e.*, receiving, validating, generating) include any structure to accomplish the stated functions.  Even the phrase "associated with a broadcast transmission network," which describes the claimed "broadcast message transmission network parameter," would fail to recite sufficient structure for these functions.  *See Advanced Ground Info. Sys.*, 830 F.3d at 1349 (rejecting as insufficient the disclosure of "the *medium* through which symbols are generated," as opposed to the component that performs the "function of generating symbols" (emphasis in original)).  Similarly, the "broadcast message distributor" is "configured for" performing two functions (*i.e.*, "receiving . . ." and "transmitting . . . ."), which also fail to include any structure to accomplish the stated functions.

Plaintiffs provide no evidence, intrinsic or otherwise, that the "module" limitations of Claim 1 recite sufficient structure to avoid interpretation as means-plus-function limitations under 35 U.S.C. § 112, ¶6.  Therefore, construction of these functional limitations must follow the two-step process set forth in Federal Circuit precedent: "First, the court must determine the claimed function.  Second, the court must identify the corresponding structure in the written description of the patent that performs the claimed function."  *Noah Sys.*, 675 F.3d at 1311.

### 3.    The '938 Patent Fails To Disclose and Clearly Link Algorithms Corresponding to Each of the Functions Required To Be Performed by Plaintiffs' "Modules."

Plaintiffs cannot seriously dispute that, if <u>any</u> corresponding structure is disclosed in the '938 patent, it is described in terms of software.  *See, e.g.*, PBr. at 25−26 ("steps for carrying out these functions on the computer"), 26 ("specific software and specific steps for the software to perform," "software running on the Broadcast Broker server"), 27 ("executing the software of the Admission Control Subsystem"), 28 ("executing the software of the distributor module").

But of course, simply reciting the use of software "without providing some detail about the means to accomplish the function is not enough."  *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340−41 (Fed. Cir. 2008).  Defendants' Opening Brief described in detail how the '938 patent fails to disclose algorithms corresponding to each of the functions recited as being performed by Plaintiffs' claimed "modules."  DBr. at 32−36 (regarding the "broadcast admission control module"), 37−40 (regarding the "broadcast message distributor module").  Plaintiffs' conclusory chart fails to establish the requisite disclosure and clear linkage, as discussed in the examples below.

> **(a)    *Plaintiffs have not identified sufficient structure to the recited functions of the "Broadcast Admission Control Module."***

Plaintiffs' conclusory chart (PBr. at 27) does not address claim 1's requirement that the "validating" function of the "broadcast admission control module" is "a function [of] one or more of" three variables:

> (1)    the broadcast message originator identifier,
>
> (2)    the broadcast target area, and
>
> (3)    a broadcast message transmission network parameter associated with a broadcast transmission network adapted for broadcasting the message to at least a portion of the broadcast target area.

'938 patent at 39:27−34.  Claim 1 lists the above variables in the conjunctive (*i.e.*, using "and"), but the disjunctive introductory phrase (*i.e.*, "one *or* more of") denotes that the validating

function accepts as sufficient the input of any one variable, or any combination of variables.[19]  In other words, as recited in Claim 1, "validating" is a function of "the broadcast message originator identifier" alone, "the broadcast target area" alone, "a broadcast message transmission network parameter" alone, or any combination of the three.

Instead of parsing the claim language, Plaintiffs' chart simply parrots the claim language and generally cites to Figure 3 and two columns of text.  PBr. at 27 (citing '938 Patent at 24:1−25:55).  Plaintiffs provide no explanation as to which portions of the '938 patent describe any aspect of "validation," let alone validation defined as broadly as it claimed.[20]  Plaintiffs cannot ignore the phrase "one or more of," as it would violate the principle that "[a]ll the limitations of a claim must be considered meaningful."  *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991).  Accordingly, especially when the introductory phrase "one or more" is given effect, the '938 patent fails to disclose an algorithm for the "validating" function. *See Noah*, 675 F.3d at 1318 ("[W]here a disclosed algorithm supports some, but not all, of the functions associated with a means-plus-function limitation, we treat the specification as if no algorithm has been disclosed at all.").

    **(b)**    *Plaintiffs have not identified sufficient structure to the recited functions of the "Broadcast Message Distributor Module."*

Plaintiffs fail to identify and clearly link structure corresponding to the functions of the

---

[19]  *See*, *e.g.*, Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 122-23 (2012) ("The wording of the lead-in may be crucial to the meaning.  If the introductory phrase is *any one or more of the following*, then the satisfaction of any one element, or any combination of elements, will suffice."); D.I. 49 (Plaintiffs' Motion to Compel) (seeking relief that "disjunctive 'OR' combinations [would] count[] as one search per separate 'ORed' term").

[20]  Defendants submit that the '938 patent fails to disclose algorithms for validating as a function of "the broadcast target area" as well as "a broadcast message transmission network parameter."  DBr. at 34.

"broadcast message distributor module."  For example, the second function performed by this module (*i.e.*, "transmitting the broadcast message . . .") includes another purely functional limitation (*i.e.*, "an output interface configured for distributing the broadcast message to at least a portion of the broadcast target area"), which Plaintiffs entirely decline to address, let alone identify allegedly corresponding structure for the omitted phrase.  *See* PBr. at 28−29 (chart omitting words of claim 1 following "to an output interface . . .").  On its own, Plaintiffs' unexplained omission renders its proposed construction and identification of corresponding structure legally deficient.  *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003) (finding that the recited function "must be construed to include the limitations contained in the claim language").

The only part of the '938 patent purporting to address "transmitting . . . to an output interface configured for distributing the broadcast message to at least a portion of the broadcast target area" is the "Presswood Algorithm," which is described only[21] in terms of its outcome: "[T]o determine each transmission network's interface components and [to] determin[e] the appropriate communications protocol for each CBC."  '938 patent at 13:43−46.  However, this brief description of the Presswood Algorithm describing "an outcome, [but] not a means for achieving that outcome," "simply describes the function to be performed" and fails to constitute a corresponding algorithm.  *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383−84 (quoting *Aristocrat Techs. Aus. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1334 (Fed. Cir.

---

[21]  A Google Search for "Presswood Algorithm" on May 23, 2017 revealed that this term is apparently not known or used outside of Plaintiffs' patents.

2008)).

    **(c)**    ***The '938 patent fails to clearly link the allegedly identified algorithms to the recited functions.***

Finally, Plaintiffs' conclusory charts (PBr. at 27−28) confirm that the '938 patent fails to "clearly link" the allegedly identified algorithms to the recited functions. For example, as to the "broadcast admission control module," the portions of the '938 patent that allegedly correspond to the first function of "receiving the broadcast record" entirely overlap with the portions of the specification allegedly corresponding to the second and third functions. *See* PBr. at 27 (citing generally to 24:1−26:4 for the "receiving" function). Similarly, the portions of the '938 patent allegedly corresponding to the first and second functions of the "broadcast message distributor module" overlap as well. *See* PBr. at 28−29 (citing to 13:43 and 14:6−37 for both functions). Additionally, Plaintiffs' general citation to large swaths of specification fails to demonstrate any linkage as between algorithm and claimed functions. For example, despite Plaintiffs identifying nearly two columns of text as corresponding to the "validating" function of the "broadcast admission control module" (PBr. at 27, citing '938 Patent at 24:1−25:55), Plaintiffs fail to identify even a single detail within this lengthy passage that corresponds to any particular aspect of the "validating" function. *See* DBr. at 35 (describing the various factors relating to admission control). Far from clearly linking the disclosure with the recited functions, Plaintiffs' own cited evidence demonstrates that the '938 patent obscures them.

## IV.    CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' Opening Claim Construction Brief (D.I. 54), the Court should adopt Defendants' proposed constructions of the disputed terms.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

GARY L. HAUSKEN
Director

_s/Nicholas J. Kim_
NICHOLAS J. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC  20530
*Nicholas.J.Kim@usdoj.gov*
T: (202) 616-8116
F: (202) 307-0345

Mark J. Abate
Calvin E. Wingfield Jr.
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8000
Fax: (212) 355-3333
*mabate@goodwinprocter.com*
*cwingfield@goodwinprocter.com*

*Counsel for International Business*
*Machines Corporation*

*Attorneys for the United States*

28